ROSALIE A. VERDUCE et al., Appellants, *v.* BOARD OF HIGHER EDUCATION IN THE CITY OF NEW YORK, Respondent, et al., Defendants.

First Department, November 17, 1959.

*Benjamin H. Siff* of counsel (*Lester Lewis Jay*, attorney), for appellants.

*Alfred Weinstein* of counsel (*Seymour B. Quel* and *Stanley Katz* with him on the brief; *Charles H. Tenney, Corporation Counsel,* attorney), for respondent.

McNALLY, J. In an action for personal injuries, loss of services and medical expenses, plaintiffs appeal from the judgment dismissing the complaint. On the trial, the action was discontinued against defendants Welch and Turnau.

Plaintiff Rosalie A. Verduce voluntarily enrolled for a non-credit course denominated the Hunter College Opera Workshop which was conducted under the auspices of the defendant-respondent Board of Higher Education in the City of New York. The group under the direction of the defendant Turnau undertook the performance of the opera " Xerxes ". During a rehearsal of the opera, the said plaintiff was directed to make a " haughty " exit without looking down, which involved stepping down 20 inches from the stage to the auditorium floor. In the act of so doing, plaintiff's left foot twisted causing her to sustain the injuries complained of. Prior to stepping down, plaintiff protested that to do so without looking down was dangerous. The defendant Turnau, however, admonished the plaintiff that to look down would constitute a failure to comply with his direction and result in her loss of the role. The loss of the role would not have disqualified the plaintiff from other participation in the workshop.

Plaintiffs' evidence establishes the injured plaintiff knew of the physical condition complained of and the risk of injury attendant upon the attempt to step down from the platform to the floor of the auditorium without looking down. Immediately prior to the occurrence, when directed by defendant Turnau to proceed with " head up ", plaintiff remonstrated: " Professor, I will break my neck ", to which Turnau responded: " Well, you must do this or you will lose the part." Several weeks prior to the accident, in response to the injured plaintiff's expression of fear of the necessity of stepping from the platform down to the floor without looking down, Turnau said: " You must not be afraid; it is all right."

At the close of the plaintiffs' proof, defendant-respondent Board of Higher Education in the City of New York moved to dismiss the complaint for failure to make out a prima facie case, failure of the plaintiffs to establish freedom from contributory negligence, and on the further ground that the injured plaintiff assumed the risk of the condition and accident complained of. After extended argument on the said motion,

the learned trial court granted the motion and dismissed the complaint.*

We find no factual issue on liability present, and, therefore, conclude the dismissal and judgment thereon are proper. The record demonstrates knowledge on the part of the injured plaintiff of the danger consequent upon stepping down from the platform to the floor of the auditorium and her knowing exposure to the said danger. The said plaintiff did not rely upon the statements of Turnau, which did not carry any assurance that the danger was any less than it appeared. A reasonable person would not rely upon the statements. (*Utica Mut. Ins. Co.* v. *Amsterdam Color Works,* 284 App. Div. 376, 379, affd. 308 N. Y. 816.) Here is not involved an unanticipated fall. (Cf. *Zurich Gen. Acc. & Liab. Ins. Co.* v. *Childs Co.,* 253 N. Y. 324, 328.) That which the injured plaintiff anticipated and articulated did, in fact, materialize; her motive to preserve her role in the opera '' Xerxes '', although professionally and artistically justifiable, does not legally excuse the failure to exercise reasonable care in regard to her safety.

The judgment should be affirmed, with costs.

RABIN, J. (dissenting). In this action for personal injuries the trial court dismissed the complaint after both parties had rested, the defendant having called no witnesses on its behalf. The case turns on the question as to whether there was any issue to be submitted to the jury.

The proof offered by the plaintiff ** established that prior to the time she came to New York in 1952 she had for some years been studying voice. After her arrival in New York and in furtherance of her musical career she paid tuition for, and joined an opera workshop class which was being offered by defendant Board of Higher Education at Hunter College. As an integral part of the course and designed to give workshop students an opportunity to participate in a full scale production of an operatic work, which they would ultimately publicly per-

---

* Plaintiffs did not, before the trial court nor in their brief on this appeal, advance as a bar to the motion to dismiss based on assumption of risk the respondent's failure to plead it as a defense. Plaintiffs did not claim surprise nor did it appear they were surprised by the motion to dismiss insofar as it was grounded on assumption of risk. The parties argued fully and extensively, addressing themselves to each of the bases for dismissal of the complaint stated and relied on by the respondent. Moreover, we are not here concerned with the burden of proof. If plaintiffs' evidence presents an issue of fact as to liability, then the dismissal is erroneous.

** The plaintiffs are husband and wife — the wife suing for personal injuries and the husband suing for loss of services, medical expenses, etc. For convenience, when using the word plaintiff, we refer to the wife.

form, the school authorities formed what was called the Hunter College Opera Association. This was not an association in the legal sense, but was called so to designate that portion of the class participating in the proposed performance. This group was under the direction of Professor Joseph Turnau, an employee of the defendant.

As one of the group, the plaintiff participated in the rehearsals which were being conducted in the auditorium of Hunter High School. The "stage" consisted of a platform raised about 20 inches above the auditorium floor. There were no steps leading from this stage to the floor, the high step-down being often made by the use of a chair or with the assistance of other students in the class. Prior to the fall which gave rise to this suit and on several occasions, the plaintiff, as did other students, complained to Professor Turnau about the danger involved in stepping down from the platform. However there had been no accidents by reason of its use until the plaintiff fell.

At one point during the rehearsals the professor deemed it necessary for the plaintiff to leave the stage in a "haughty" manner and for that purpose he directed that she hold her head high as she stepped off the platform. When the plaintiff expressed fear of the consequences he gave her the following assurance: "You must not be afraid; it is all right." When, on January 19, 1953, the professor again directed her to leave the stage in that manner she stated "Professor, I will break my neck." Despite such expressed fear the professor insisted that she follow his instructions stating that she would lose her part in the opera if she failed to do so. She again demurred, but when the professor directed that his instructions be followed, she stepped off, head high, fell and sustained a fracture of the leg.

If the dismissal of the complaint is to be sustained we must find as a matter of law an absence of negligence on the part of defendant or, either contributory negligence or such an assumption of the risk as would preclude recovery by the plaintiff.

Undoubtedly the plaintiff made out a prima facie case of negligence. The professor in making the specific direction to the plaintiff was acting within the scope of his authority and in the course of his employment. It could be found that he should have foreseen the possibility of injuries and therefore, in the circumstances, the giving of the direction was a negligent act particularly in the light of the earlier complaints and the overt physical features of the platform (*Broderick* v. *Cauldwell-Wingate Co.*, 301 N. Y. 182).

As to whether the plaintiff was guilty of contributory negligence or in the alternative assumed the risk of injury so as to preclude recovery presents a more difficult question.

At the outset it appears that the defense of assumption of risk may not be available to the defendant. This defense unlike that of contributory negligence is one that must be pleaded affirmatively (*Dowd* v. *New York, Ontario & Western Ry. Co.,* 170 N. Y. 459; *Buckley* v. *Cunard S. S. Co.,* 233 App. Div 361). There was no such affirmative defense pleaded nor was any motion made by the plaintiff to conform the pleadings to the proof. Accordingly, the dismissal may not rest on that ground.

However, apart from this technical omission the court should not, on the law, have dismissed the complaint on the ground that the plaintiff assumed the risk.

The distinction between contributory negligence and assumption of risk is not always readily discernible. " Very often the difference is chiefly one of terminology " (*McFarlane* v. *City of Niagara Falls,* 247 N. Y. 340, 349). There are areas where, as Judge CARDOZO put it in that case " the concept of contributory negligence merges almost imperceptibly into that of acceptance of a risk ". However, a broad line of demarcation may be made by saying that assumption of risk is the doing of an act knowing the possible or probable consequence of that act, i.e., where there is foresight of the consequences (*McFarlane* v. *City of Niagara Falls, supra,* p. 349). And there must be a voluntary exposure to the danger in circumstances as would indicate or impute to the plaintiff an acceptance of such risk and an intention to relieve the defendant from liability for his negligence (*McEvoy* v. *City of New York,* 266 App. Div. 445; 1 Shearman-Redfield, Negligence, § 135). Contributory negligence, on the other hand, is the doing of an act which in the circumstances a reasonably prudent person would not have done, and where the danger is foreseeable although possibly the plaintiff negligently failed to foresee it.

It is not in every case where the danger is foreseen by the plaintiff that we hold the defendant free from liability. As we have already pointed out we do so only when the circumstances are such as would impute to the plaintiff a willingness to assume the responsibility for the consequences of his act to the exclusion of holding the defendant liable for his negligence. Thus when one tries to escape from a position in which he was placed through the negligence of another he may do an act which has a foreseeable risk. However, if there is a reasonable ground for believing that his attempt to escape would be less dangerous

than to remain in his then position, the risk in so doing is not assumed by him. In such circumstances we hold the person whose negligence placed him in that position liable (Prosser, Law of Torts [2d ed.], § 55, pp. 312–313). The facts and circumstances of each case must determine whether there was an assumption of risk by the plaintiff. He may be barred from recovery only upon a showing that his act was an unreasonable one (see James, Assumption of Risk, 61 Yale L. J. 141 [1952]).

Thus, responsibility has been fixed on defendants for negligence in cases where employees were injured even though such employees did foresee the possibility of danger (*Broderick* v. *Cauldwell-Wingate Co.*, 301 N. Y. 182, *supra*). In such cases (usually in third-party suits) we hold that the employee did not assume the risk of his conduct because he acted pursuant to an order and under the compulsion of the economic pressure inherent in his employment. The court in *Broderick* v. *Cauldwell-Wingate Co.* (*supra*, p. 188) very clearly set forth this principle in the following language: "It appears established that when a person in the capacity of a superior assumes control over a workman on a job and directs him to proceed under circumstances recognizable as dangerous, the subordinate workman has little, if any, choice in the matter but to obey it and, if he stays within the limits of the superior's instructions and is injured, he may not be penalized by a claim of contributory negligence as a matter of law. While, with the Labor Law aside, this issue remains in the case (cf. *Koenig* v. *Patrick Constr. Corp.*, 298 N. Y. 313) it survives as a question of fact for the jury (*Thomas* v. *Solvay Process Co.*, 216 N. Y. 265; *Zurich Gen. Accident & Liability Ins. Co.* v. *Childs Co., supra*)." In this type of case we often find two factors which permit us to sustain liability despite the actor's knowledge of possible danger; the first a direction by a superior to do the act and second, an economic compulsion or other circumstance which equally impels him to follow the direction. It should be observed that in most instances, implicit in such direction is an assurance of safety (*Zurich Gen. Acc. & Liab. Ins. Co.* v. *Childs Co.*, 253 N. Y. 324). The test must always be whether the plaintiff's act is that of a reasonably prudent person in the circumstances prevailing.

In this case must it be held as a matter of law that the plaintiff acted unreasonably in the circumstances? I think not. At the outset we must give consideration to the relationship existing between the defendant's employee and the plaintiff. One was the instructor, the other the student. One was the

director, the other taking direction. To all intents and purposes he was her superior whose orders she was obliged to follow. Was this plaintiff free to act as she chose in the circumstances? Was she not under the stress of a compulsion which could be said to be equally as compelling as in the case of an employee who is in danger of losing his position for failure to follow instructions? These are questions which a jury should answer. The answers cannot be found in the law. Failure to obey the order, she was assured, would result in her losing an opportunity for public performance — so important for one whose future career is that of a public performer. It cannot be said that a reasonably prudent person would not consider the loss of such an opportunity even more compelling than the loss of employment. What was she to do in the face of the direction given by her superior, coupled with the threat that accompanied it? It seems to me it is for a jury to give the answer to that question. Furthermore, while it might be said that implicit in the direction itself was an assurance of safety, it could be found that such assurance was expressly given when the professor said: "You must not be afraid; it is all right." Could not a jury have found that the fear of the plaintiff was somewhat allayed by that statement and could not the jury also come to the conclusion that a reasonably prudent person in the circumstances would have decided that there was a possibility of negotiating the step with reasonable safety? Present the direction and the circumstances which impelled the plaintiff to follow it the question then is — did she act in a reasonable manner? If the answer be yes, then even though she may have had knowledge that there was a risk involved, the law will not fasten the consequences of such risk upon her but will hold the defendant to its liability for negligence. If the answer be no, then she will be deemed to have assumed the risk of her actions and be precluded from recovering. That question, however, is one of fact in this case and not of law and should have been submitted to the jury for determination.

On the other hand the plaintiff may not recover if she was guilty of contributory negligence. As indicated, the line of demarcation between assumption of risk and contributory negligence is often not clear. Sometimes they overlap. This case appears to be one where such overlapping is present. This case is indeed in the "borderland where the concept of contributory negligence merges almost imperceptibly into that of acceptance of a risk". The same factors must be taken into consideration in deciding whether there was contributory negligence as were considered in determining whether the plaintiff

had assumed the risk. We then come to the same conclusion; that contributory negligence was for the jury as a question of fact and not for the court as a matter of law.

Whether in the light of the above principles and the circumstances of the case there should be a verdict for the plaintiff or against her is not to be here determined. It may be rather simple for the jury to resolve the question but that would not justify taking the case from the jury. The answer still depends on findings of fact. The court should not have decided the case purely on the law.

Accordingly, I dissent and vote to reverse and order a new trial.

M. M. FRANK and VALENTE, JJ., concur with McNALLY, J.; RABIN, J., dissents in opinion in which BREITEL, J. P., concurs.

Judgment affirmed, with costs to the respondent.

