OPINION OF THE COURT
Bellacosa, J.
In this personal injury action seeking damages arising from *654 a paralyzing high school football injury, the jury returned a verdict for plaintiff Benitez on four separate theories of negligence against the New York City Board of Education (Board) and its Public Schools Athletic League (PSAL). The Trial Justice granted a postverdict motion rejecting two of the four negligence theories. In a split decision, the Appellate Division affirmed the judgment for Benitez in the sum of $878,330 and subsequently granted the Board and PSAL leave to appeal.
We reverse and dismiss the complaint because plaintiff adduced insufficient evidence that defendants breached any duty of reasonable care which can be said to have proximately caused his injuries. A board of education, its subordinate employees and interscholastic athletic organizations must exercise only reasonable care to protect student athletes in sports competitions from injuries arising out of unassumed, concealed, or unreasonably increased risks. The trial court incorrectly resolved the duty/causation issue and did so under an erroneous higher duty of care instruction.
Benitez was a 19-year-old senior star athlete at George Washington High School (GW) when he suffered a broken neck in 1983 during a varsity football game against another Division A team, John F. Kennedy High School (JFK). GW had been placed in Division A prior to the 1982 season by the Football Committee of the PSAL. The PSAL determined, pursuant to established guidelines, that GW was better suited for Division A competition than the less competitive Division B league where GW had been dominant the three previous seasons. GW exhausted its administrative appeals, arguing throughout that Division A competition was "potentially dangerous to the safety and welfare of the team” and that the players might "suffer serious injuries”. Before the start of the 1983 season, GW again sought to be assigned to Division B, citing among its grounds safety concerns and the injury toll suffered by the team during the 1982 season. Under PSAL administrative guidelines and because the injuries suffered by GW players were akin in number and degree with those of other Division A teams, this request for reassignment was also denied.
Following the 1983 denial, GW’s coach advised the school’s new principal to drop the football program but was told that such action would result in the barring of all GW athletic teams from interscholastic competition for the year. Prior to the 1983 GW-JFK game, the coach and the assistant principal *655 in charge of physical education and health advised GW’s principal that the game was a mismatch and should not be played because of the high risk of injury. The coach testified as a witness for plaintiff that, despite the principal’s decision to play the season and the game, he viewed it as the coach’s responsibility to pull a team off the field in the face of unsafe competition. He felt at the time it was unsafe for his team to be playing JFK; he knew his players were fatigued; he did not have the personnel to rest Benitez; and he was aware that injuries are most likely to occur when players are tired. He did not unilaterally cancel the game because he feared it might cost him his job.
Plaintiff Benitez had received numerous college football scholarship offers before his injury. He testified that he played football voluntarily and that he was fully trained by a qualified coach, particularly with respect to proper blocking techniques. His injury occurred with 1 minute and 17 seconds left in the first half of the game while correctly executing a block during a kick-off return by his team. Prior to his injury, he engaged, as was customary for him, in the great majority of plays for his team’s offensive, defensive and special squads. Plaintiff conceded he was fatigued at the time of his injury but had not so informed his coach.
Benitez initiated this action against the Board, PSAL and City of New York alleging negligence in placing and retaining GW in Division A; allowing GW to play the JFK game in the face of an obvious mismatch; and allowing him to play virtually the entire first half of the game without adequate rest. Prior to submission of the case to the jury, the Trial Justice dismissed the case as against the City of New York. The court subsequently instructed the jury, over objection, that the defendants were obligated to exercise the same level of care "as a parent of ordinary prudence would exercise under the same circumstances”.
The jury verdict in Benitez’ favor apportioned 30% of the fault against him and 70% against the defendants. The Trial Justice granted, in part, a motion for a judgment notwithstanding the verdict and dismissed the causes relating to the placement and retention of GW in Division A, reasoning that these were discretionary determinations. Declining to direct a defendants’ verdict on the remaining negligence theories, the Trial Justice stated: "[c]ertainly, the jury had a right to indicate that from the facts that were given, that they acted *656 negligently in permitting him to play; particularly, if the coach indicated that he was fatigued. And, if he was playing him in a manner knowing that he was fatigued, certainly the jury could find that he was negligent in doing that.”
In affirming, the Appellate Division majority reasoned that despite Benitez’ voluntary participation and assumption of the risks inherent in football, the coach knew it was unsafe for Benitez to be playing full time, while tired, in a mismatched game and that the failure to rest him substantially increased the likelihood of injury and was its proximate cause. Additionally, the risk of injury was said to have been unreasonably enhanced by the "indirect compulsion” (141 AD2d, at 459) of the teacher-student relationship and the student’s concern that he not jeopardize his college scholarship opportunities by removing himself from the game.
The dissenting Justice stated that the standard of care applicable to this situation was unsettled, but regardless of whether it was a "reasonable care” or a "prudent parent” standard, neither was breached in this case. Viewing fatigue and injury as risks inherent in football and assumed by plaintiff, the dissenters asserted that the assumption of risk defense was unrebutted. They rejected application of the "implied compulsion” theory as there was no evidence that the 19-year-old plaintiff was acting in other than a voluntary manner.
Leave was granted by the Appellate Division on a certified question which need not be answered, as the order appealed from finally determines the action. We reverse and dismiss the complaint.
The trial court erroneously instructed the jury that a school owes a student voluntarily competing in an interscholastic high school football game the more protective duty and standard of care of a prudent parent (compare, Pratt v Robinson, 39 NY2d 554; Lawes v Board of Educ., 16 NY2d 302, 305; Hoose v Drumm, 281 NY 54, 57-58). In the context of wholly voluntary participátion in intramural, interscholastic and other school-sponsored extracurricular athletic endeavors, we have required the exercise of the less demanding ordinary reasonable care standard (see, Scaduto v State of New York, 86 AD2d 682, 683, affd 56 NY2d 762; Govel v Board of Educ., 267 App Div 621, 624, affd 293 NY 928).
To be sure, application of the personal injury principles of duty, breach and proximate cause in the context of sports *657 injuries almost invariably includes a discussion also of assumption of risk. The common Latin aphorism cited in the cases translates as follows: one who consents to an act does not suffer a compensable injury. As Judge Cardozo put it in the "Flopper” amusement ride case, "[o]ne who takes part in such a sport accepts the dangers that inhere in it so far as they are obvious and necessary, just as a fencer accepts the risk of a thrust by his antagonist or a spectator at a ball game the chance of contact with the ball” (Murphy v Steeplechase Amusement Co., 250 NY 479, 482; see, Akins v Glens Falls City School Dist., 53 NY2d 325, 329; see also, 1 Lee and Lindahl, Modern Tort Law § 9.01, at 237-238 [rev ed]; Restatement [Second] of Torts § 496A, comment b). As an integral part of athletic competitions, persons are generally held by their actual and implied consents to the risks of "injury-causing events which are known, apparent or reasonably foreseeable consequences of the participation” (Turcotte v Fell, 68 NY2d 432, 439; see, 2 Speiser, Krause, Gans, American Law of Torts § 9:43, at 1328). In this context, however, important legal distinctions are drawn between compulsory physical education courses and voluntary participation in interscholastic athletic activity (Passantino v Board of Educ., 52 AD2d 935, 937, read on dissenting opn 41 NY2d 1022), as well as between professional and amateur status (Maddox v City of New York, 66 NY2d 270, 278).
Assumption of risk in competitive athletics "is not an absolute defense but a measure of the defendant’s duty of care” (Turcotte v Fell, 68 NY2d 432, 439, supra; see, Arbegast v Board of Educ., 65 NY2d 161, 170). The policy underlying this tort rule is intended to facilitate free and vigorous participation in athletic activities. But even with professional athletes, it is "qualified to the extent that participants do not consent to acts which are reckless or intentional” (Turcotte v Fell, supra, at 439; see, 2 Speiser, Krause, Gans, American Law of Torts § 9:43, at 1328). Awareness of the risk assumed is "to be assessed against the background of the skill and experience of the particular plaintiff, and in that assessment a higher degree of awareness will be imputed to a professional than to one with less than professional experience in the particular sport” (Maddox v City of New York, 66 NY2d 270, 278, supra [citations omitted]; see, McGee v Board of Educ., 16 AD2d 99, 102, lv denied 13 NY2d 596; Prosser and Keeton, Torts § 68, at 487 [5th ed]). Manifestly, a high school athlete, even an outstanding one, does not assume all the risks of a profes *658 sional sportsperson, but neither does a 19-year-old senior star football player and college scholarship prospect fall within the extra protected class of those warranting strict parental duties of supervision.
In Passantino v Board of Educ. (52 AD2d 935, 937, revd on dissenting opn 41 NY2d 1022, supra), this court accepted a distinction between the circumstances of a physical education course, where participation is compulsory, and purely voluntary activity in interscholastic sports. We dismissed the complaint in that case in circumstances remarkably parallel to this case, albeit in a different sport — baseball. Players who voluntarily join in extracurricular interscholastic sports assume the risks to which their roles expose them but not risks which are "unreasonably increased or concealed” (McGee v Board of Educ., 16 AD2d 99, 102, lv denied 13 NY2d 596, supra; compare, Govel v Board of Educ., 267 App Div 621, affd 293 NY 928, supra). The distinction has continued validity and usefulness in correctly deciding this and like cases.
We hold that a board of education, its employees, agents and organized athletic councils must exercise ordinary reasonable care to protect student athletes voluntarily involved in extracurricular sports from unassumed, concealed or unreasonably increased risks.
 On the record before us, we conclude as a matter of law that there was no showing of inherent compulsion and that Benitez’ injury was not the consequence of a failed duty of care on the part of the defendants.
The theory of inherent compulsion provides that the defense of assumption of the risk is not a shield from liability, even where the injured party acted despite obvious and evident risks, when the element of voluntariness is overcome by the compulsion of a superior (see, Maddox v City of New York, 66 NY2d 270, 279, supra). Two factors are generally present to sustain a finding of liability on an inherent compulsion theory despite the injured party’s knowledge of the risk, "a direction by a superior to do the act” and "an economic compulsion or other circumstance which equally impels” compliance with the direction (Verduce v Board of Higher Educ., 9 AD2d 214, 219 [dissenting opn], revd on dissenting opn 8 NY2d 928; Broderick v Cauldwell-Wingate Co., 301 NY 182). Though the risk is foreseen, an assurance of safety generally implicit in the supervisor’s direction supplants the plaintiff’s assumption of the risk by requiring action despite prudent cautionary *659 concerns (see, Verduce v Board of Higher Educ., supra, at 219; Zurich Gen. Acc. & Liab. Ins. Co. v Childs Co., 253 NY 324; see also, Prosser and Keeton, Torts § 68, at 490-492 [5th ed]).
The coach undeniably supervised plaintiff, who may have feared that if he did not play or if he asked to be rested his athletic standing or scholarship opportunities might be jeopardized. However, there was no evidence at all that plaintiff was concerned about an unreasonably heightened risk of competition or that his coach directed him to disregard a risk he would not have otherwise assumed anyhow. While plaintiff testified he was tired, he acknowledged that he was participating voluntarily, that he did not inform his coach of his fatigue, and that he was playing without complaint under the same conditions as he had for the previous season and one half. In sum, plaintiff Benitez failed to present any evidence that he had no choice but to follow the coach’s direction to play despite his concern over enhanced risk factors known by or communicated to the coach (Maddox v City of New. York, 66 NY2d 270, 279, supra).
Moreover, while issues of proximate cause are generally fact matters to be resolved by a jury, “where only one conclusion may be drawn from the established facts * * * the question of legal cause may be decided as a matter of law” (Derdiarian v Felix Contr. Co., 51 NY2d 308, 315; see also, Boltax v Joy Day Camp, 67 NY2d 617, 620). Fatigue and, unfortunately, injury are inherent in team competitive sports, especially football. Benitez was concededly an excellent athlete, properly equipped and well-trained. He was playing voluntarily in the same manner as he had for the previous year and one half against Division A competition and had not requested rest or complained. Within the breadth and scope of his consent and participation, plaintiff put himself at risk in the circumstances of this case for the injuries he ultimately suffered. On his own proof, he thus failed to meet the burden of showing some negligent act or inaction, referenced to the applicable duty of care owed to him by these defendants (see, Turcotte v Fell, 68 NY2d 432, supra; Passantino v Board of Educ., 52 AD2d 935, revd on dissenting opn 41 NY2d 1022, supra), which may be said to constitute "a substantial cause of the events which produced the injury” (Derdiarian v Felix Contr. Co., supra, at 315; see also, Nallan v Helmsley-Spear, Inc., 50 NY2d 507, 520). The injury in this case, in sum, was a luckless accident arising from the vigorous voluntary participation in competitive interscholastic athletics.
*660 Accordingly, the order of the Appellate Division should be reversed and the complaint dismissed, with costs. The certified question should not be answered as unnecessary.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Hancock, Jr., concur.
Order reversed, etc.