OPINION OF THE COURT
Lawrence Donohue, J.
*835 The defendant moved to dismiss the misdemeanor information in the interest of justice pursuant to CPL 170.40. After a Clayton hearing, the court dismissed the information in accordance with the following opinion.
The defendant is charged with assault in the third degree in violation of Penal Law § 120.00 (1). The factual portion of the information reads as follows: “The defendant, at the Superior Ice Rink * * * the defendant Robert Schacker during an ice hockey game and after a play was over and the whistle had blown, did come up behind Andrew Morenberg who was standing near the goal net and did strike him on the back of the neck and caused him to strike his head on the crossbar of the net, causing him to sustain a concussion, headaches, blurred vision, and memory loss. Injuries had been treated at St. John’s Hospital, Smithtown.”
The deposition of the complainant parallels the factual portion of the information. At the hearing, the hospital records of the complainant were admitted for the purposes of the Clayton hearing. Both an X-ray and a CAT scan showed no damage. The final diagnosis was “Contusion Forehead”. Thus the medical records show only minor injuries.
Since the defendant had pleaded “not guilty”, the People are required to prove that the defendant possessed the conscious intent to cause physical, injury to the complainant. (See, Penal Law § 15.05.) The fact that the act occurred in the course of a sporting event is a defense that tends to deny that the requisite intent was present.
As Chief Judge Benjamin Cardozo said in Murphy v Steeplechase Amusement Co. (250 NY 479, 482-483):
“One who takes part in such a sport accepts the dangers that inhere in it so far as they are obvious and necessary, just as a fencer accepts the risk of a thrust by his antagonist or a spectator at a ball game the chance of contact with the ball * * *
“A different case would be here if the dangers inherent in the sport were obscure or unobserved * * * or so serious as to justify the belief that precautions of some kind must have been taken to avert them”.
(See, DeSantis, Assumption of Risk Doctrine Is Alive And Well, NYLJ, Dec. 2, 1997, at 1, col 1.) Persons engaged in athletic competition are generally held to have legally assumed the risk of injuries which are known, apparent and reasonably foreseeable consequences of participation. (Morgan v State of New York, 90 NY2d 471 [1997]; Turcotte v Fell, 68 NY2d 432, *836 439.) Hockey players assume the risk of injury by voluntarily participating in a hockey game at an ice rink. (Greenberg v North Shore Cent. School Dist. No. 1, 209 AD2d 669; Cassese v Ramapo Ice Rinks, 208 AD2d 488.)
This tort rule states a policy “intended to facilitate free and vigorous participation in athletic activities.” (Benitez v New York City Bd. of Educ., 73 NY2d 650, 657.) This policy would be severely undermined if the usual criminal standards were applied to athletic competition, especially ice hockey. If cross checking, tripping and punching were criminal acts, the game of hockey could not continue in its present form.
The complainant does not assume the risk of reckless or intentional conduct. (Morgan v State of New York, supra, at 484.) However, it must be recognized that athletic competition includes intentional conduct that has the appearance of criminal acts. In fact, in many sporting events, physical injuries are caused by contact with other players. However, the players are “legally deemed to have accepted personal responsibility for” the risks inherent in the nature of sport (supra, at 484). This includes intentional acts which result in personal injury. Thus, in order to allege a criminal act which occurred in a hockey game, the factual portion of the information must allege acts that show that the intent was to inflict physical injury which was unrelated to the athletic competition. Although play may have terminated, the information herein does not show that the physical contact had no connection with the competition. Furthermore, the injuries must be so severe as to be unacceptable in normal competition, requiring a change in the nature of the game. That type of injury is not present in this case. Firstly, the physical injury resulted from hitting the net, not from direct contact with the defendant. Secondly, the hospital records do not indicate severe trauma to the complainant.
The idea that a hockey player should be prosecuted runs afoul of the policy to encourage free and fierce competition in athletic events. The People argued at the hearing that this was a nonchecking hockey league. While the rules of the league may prohibit certain conduct, thereby reducing the potential injuries, nevertheless, the participant continues to assume the risk of a strenuous and competitive athletic endeavor. The normal conduct in a hockey game cannot be the standard for criminal activity under the Penal Law, nor can the Penal Law be imposed on a hockey game without running afoul of the policy of encouraging athletic competition.
*837 For the foregoing reasons, the interest of justice requires a dismissal of this charge pursuant to CPL 170.40.