■ AZAD ANAND et al., Appellants, v ANOOP KAPOOR, Respondent. [877 NYS2d 425]—

In an action to recover damages for personal injuries, etc., the plaintiffs appeal, as limited by their brief, from so much of an order of the Supreme Court, Nassau County (De Maro, J.), dated May 7, 2007, as granted the defendant's motion for summary judgment dismissing the complaint.

Ordered that the order is affirmed insofar as appealed from, with costs.

The plaintiff Azad Anand (hereinafter the plaintiff) was seriously injured when he was struck in the eye by a golf ball hit by the defendant, Anoop Kapoor. The plaintiff and the defendant are both physicians, and prior to the accident they had been friends for many years and often golfed together. On the morning of October 19, 2002, the plaintiff and the defendant went to the Dix Hills Park Golf Course to play golf with a friend, Balram Verma. During play at the first hole, after each member of the threesome had hit two shots, they separated and walked toward their respective golf balls. At his deposition, the plaintiff testified that as soon as he located his ball on the fairway and turned around to assess where the other members of his group had gone, he was struck by the defendant's misdirected ball. The plaintiff estimated that he was approximately 15 to 20 feet in front of the defendant when the errant ball was hit. He admitted that it was customary for members of the same golfing party to stand behind the person hitting the ball.

Although Verma similarly testified at his deposition that the plaintiff's ball was about 20 feet forward of the defendant's ball at the time of the accident, he additionally indicated that the plaintiff was at an angle approximately 50 degrees away from the hole in the green where the defendant was directing his shot. In contrast, at his deposition, the defendant testified that the plaintiff was standing at a considerably greater distance in front of him when the shot was hit, and was at an angle approximately 60 to 80 degrees away from his intended line of flight. While the defendant did not see anyone standing between his ball and the hole when he approached to make his shot, he admitted that he did not actually know where either the plaintiff or Verma was prior to hitting the ball. While the defendant further maintained that he shouted out a warning to the plaintiff when he realized that the ball was headed in his direction, neither the plaintiff nor Verma heard any warning.

After depositions were completed, the defendant moved for summary judgment dismissing the complaint. In support of his motion, the defendant argued that the plaintiff had assumed the risk of being hit by a misdirected golf ball by voluntarily participating in the game of golf. The defendant also argued that, even assuming that a golfer owes a duty to another person to give warning by yelling "fore" before hitting the ball, such a duty only exists where the other person is within the intended line of flight of the golf ball. The defendant maintained that, under the circumstances of this case, he had no duty to yell

"fore" because his deposition testimony, Verma's deposition testimony, and a photograph recreating the respective positions of the three golfers prepared by the plaintiffs' counsel, all demonstrated that the plaintiff was standing at an angle so far from the intended line of flight that he was not within the foreseeable ambit of danger. In opposition to the motion, the plaintiff relied, inter alia, upon an affidavit of a golf professional who opined that the defendant violated the "universally recognized" rules and procedures of the game by making a shot without first ascertaining that the other members of his group were not in a position to be struck by an errant ball, and by failing to give warning before striking the ball. The Supreme Court, among other things, granted the defendant's motion for summary judgment, concluding that while this was a terrible accident, being struck by an errant golf ball was an inherent risk of the game of golf. The court further concluded that no one was in the intended line of flight when the defendant struck the ball. We affirm.

We acknowledge that there is authority which holds that "[a] golfer has a duty to give a timely warning to other persons within the foreseeable ambit of danger" (*Jenks v McGranaghan,* 30 NY2d 475, 479 [1972]; *see Richardson v Muscato,* 176 AD2d 1227 [1991]; *McDonald v Huntington Crescent Club,* 152 AD2d 543 [1989]; *Noe v Park Country Club of Buffalo,* 115 AD2d 230 [1985]; *Jackson v Livingston Country Club,* 55 AD2d 1045 [1977]). Our dissenting colleague concludes that the defendant failed to make a prima facie showing that the plaintiff was not in the foreseeable ambit of danger because both golfers were on the same fairway. However, in our view the photograph depicting the positions of the three golfers prepared by the plaintiffs' counsel, as well as the deposition testimony of the defendant and Verma, are sufficient to establish that the plaintiff was at so great an angle away from the defendant and the intended line of flight that he was not in the foreseeable danger zone. As the Court of Appeals explained in *Jenks*, while there is no fixed rule regarding the distance and angle which are considered within the ambit of foreseeable danger, "if the distance and angle are great enough they are not within the danger zone as defined by previous cases" (*Jenks*, 30 NY2d at 480). In *Jenks*, the Court ultimately concluded that the injured plaintiff, who was standing on another tee about 25 yards away from the intended line of flight, was not within the zone of danger. The *Jenks* Court also cited a Georgia case where the court held that there was no negligence in failing to give advance warning notwithstanding that the plaintiff was only 17 degrees away from the intended line of flight (*id.* at 479, citing *Rose v Morris,*

97 Ga App 764, 104 SE2D 485 [1958]). Here, the testimony of the defendant and Verma establish that the plaintiff was at least 50 degrees away from the intended line of flight, and their testimony is corroborated by the photograph prepared by the plaintiffs' counsel. Accordingly, under the *Jenks* line of authority, the defendant owed no duty to the plaintiff to give warning of his intent to hit the ball, and cannot be held liable for his misdirected shot on this basis.

More fundamentally, we note that a rule recognizing that liability can be predicated upon a golfer's negligent failure to give warning before hitting the ball is inconsistent with the doctrine of primary assumption of the risk as it has developed in the years since the Court of Appeals decided *Jenks* in 1972. Modern developments in the doctrine of primary assumption of the risk set limits on the duty of care owed to participants in sporting and recreational activities by requiring that the existence of a duty be evaluated against a consideration of the risks the plaintiff assumed when he or she elected to participate in the event, and "how those assumed risks qualified defendants' duty to him [or her]" (*Turcotte v Fell,* 68 NY2d 432, 438 [1986]; *see Morgan v State of New York,* 90 NY2d 471, 485 [1997]). By voluntarily participating in a sporting or recreational activity, the plaintiff is deemed to have consented, in advance, " 'to relieve the defendant of an obligation of conduct toward him [or her], and to take his [or her] chances of injury from a known risk arising from what the defendant is to do or leave undone . . . The result is that the defendant is relieved of legal duty to the plaintiff; and being under no duty, he [or she] cannot be charged with negligence' " (*Turcotte,* 68 NY2d at 438, quoting Prosser and Keeton, Torts § 68, at 480-481 [5th ed]). The risks which participants in sporting or recreational activities are deemed to have consented to are those "commonly appreciated risks which are inherent in and arise out of the nature of the sport generally and flow from such participation" (*Morgan v State of New York,* 90 NY2d at 484). Risks which fall outside the scope of the doctrine are those of reckless or intentional conduct, or concealed or unreasonably increased risks (*see Morgan v State of New York,* 90 NY2d at 485; *Benitez v New York City Bd. of Educ.,* 73 NY2d 650, 658 [1989]; *Turcotte,* 68 NY2d at 439).

The Court of Appeals has not, in recent years, considered the doctrine of primary assumption of the risk as it applies to the game of golf. However, the Court observed in *Rinaldo v McGovern* (78 NY2d 729, 733 [1991]) that "[a]lthough the object of the game of golf is to drive the ball as cleanly and directly as possible toward its ultimate goal (the hole), the possibility that

the ball will fly off in another direction is a risk inherent in the game." Indeed, the risk of being hit by an errant golf ball is little different from the risk of being hit by a misdirected ball at a baseball, basketball, soccer, or tennis game. The risk of being hit by a misdirected ball is equally inherent in each sport. Thus, application of the doctrine of primary assumption of risk provides an additional basis for affirmance because it compels us to conclude that the plaintiff assumed the risk of being struck by a poorly executed shot.

Moreover, we cannot agree with our dissenting colleague that the defendant's failure to follow a rule of golfing etiquette which requires a golfer to yell "fore" before hitting the ball constituted an unreasonably increased risk which the plaintiff did not assume by playing golf. As previously discussed, the defendant did not violate this golfing tradition as a matter of law because his fellow golfers were so far from the intended line of flight of his ball as to be outside the foreseeable zone of danger. In any event, even assuming that the defendant was negligent in failing to ascertain precisely where the other members of his party were before hitting the ball, or that they were close enough to the intended line of flight of his ball to require him to call out a warning, such carelessness does not rise to the level of creating a dangerous condition over and above the usual dangers inherent in participating in the sport of golf (*see Morgan v State of New York*, 90 NY2d at 485).

We further disagree with our dissenting colleague's conclusion that the Court of Appeals' rationale in *Turcotte* (68 NY2d 432 [1986]) is inapplicable because a golfer's failure to shout "fore" before hitting the ball provides no competitive advantage. In *Turcotte*, a professional jockey who fell from his mount during a race and was tragically rendered a paraplegic commenced an action against several parties, including a fellow jockey who had allegedly crossed into the plaintiff's lane of travel in violation of a regulation prohibiting foul riding. The Court of Appeals noted that the foul riding rule was a safety measure which established a spectrum of conduct and penalties, depending on whether the violation was careless or willful, and whether the contact was the result of mutual fault. The Court then observed that "[a]s the rule recognizes, bumping and jostling are normal incidents of the sport," rather than "flagrant infractions unrelated to the normal method of playing the game and done without any competitive purpose" (*id.* at 441). Emphasizing that the essence of the plaintiff's claim against the defendant jockey was that he had carelessly failed to control his mount as the horses raced for the lead, the Court concluded that "[w]hile

a participant's 'consent' to join in a sporting activity is not a waiver of all rules infractions, nonetheless a professional clearly understands the usual incidents of competition resulting from carelessness, particularly those which result from the customarily accepted method of playing the sport, and accepts them. They are within the known, apparent, and foreseeable dangers of the sport and not actionable" (*id.*). Clearly, there are factual distinctions between *Turcotte* and the case at bar since bumping and jostling are usual incidents of competition in horse racing, while the practice of shouting out a warning to individuals who are in the line of flight does not serve a competitive purpose. However, we do not read the Court of Appeals' rationale so narrowly as to restrict the applicability of the doctrine of primary assumption of the risk to the negligent violation of rules which are intended to give a player a competitive advantage. To the contrary, the principle to be distilled from *Turcotte* is that a defendant unreasonably increases the risks inherent in a sport only where his or her conduct is both without competitive purpose and constitutes a flagrant infraction unrelated to the normal method of playing the game. Clearly, the defendant's allegedly negligent failure to have shouted out a warning before hitting the ball does not constitute the type of flagrant and unexpected infraction of a rule envisioned by the Court in *Turcotte.*

Finally, we note that the existence and scope of duty in tort cases is a question of law which requires the court to consider and weigh competing public policy considerations (*see Espinal v Melville Snow Contrs.*, 98 NY2d 136, 138 [2002]). As our dissenting colleague recognizes, the doctrine of primary assumption of the risk operates to relieve a participant in a sporting or recreational activity from a duty of care toward another participant in order to further the policy goal of facilitating free and vigorous participation in such activities. While we are sympathetic to the fact that the plaintiff was seriously injured as a result of this accident, to conclude that the defendant can be held liable in tort for a poorly-executed golf shot because he may have negligently failed to shout "fore" is inimical to the rationale underlying the doctrine of primary assumption of risk, and at odds with the public policy basis for its adoption. Santucci, J.P., Angiolillo, and Eng, JJ., concur.

Chambers, J. (dissenting and voting to reverse the order insofar as appealed from, on the law, and to deny the defendant's motion for summary judgment dismissing the complaint, with the following memorandum): As noted by the majority, the record contains conflicting evidence as to the location of the plaintiff Azad Anand (hereinafter the plaintiff) in relation to

the defendant at the time of the accident. In his deposition, the defendant testified that, prior to hitting the ball which caused the accident, he hit his ball to the left side of the fairway into the rough. His goal was to hit the ball back onto the fairway and further towards the hole. He did not know where his companions were when he hit the "final ball," but he did not see anyone ahead of him.

The defendant's ball went sharply to the right at a low trajectory. After he hit the ball, the defendant saw that the plaintiff was ahead of him and yelled out. The plaintiff turned, and the ball hit the plaintiff in the eye.

During his deposition, the plaintiff estimated that he was 15 to 20 feet in front of the defendant at the time the defendant yelled out. A third companion testified at his deposition that the plaintiff's ball was 20 feet in front of the defendant's ball, which supported the plaintiff's testimony that he was 15 to 20 feet in front of defendant, since the plaintiff had reached his own ball at the time the accident occurred. However, the actual distance between the players is unclear.

The defendant acknowledged that a player is generally required to yell "fore" before hitting the ball to warn other players, which the defendant did not do. However, the defendant claimed he was not required to yell "fore" in this instance because no player was in his intended line of play.

The plaintiff submitted the affidavit of a golf expert, who stated that the rules of golf require that players should not play until players in front are out of range, and golfers are required to yell "fore" if a golfer in the group is in a position to be hit by an errant ball. Here, the plaintiff and the defendant were on the same fairway.

The order appealed from, inter alia, awarded the defendant summary judgment on the ground that the plaintiff was hit by an "errant ball" and the plaintiff was not in the "intended line of flight." The majority would affirm on the ground that there is "sufficient" evidence in the record to support the conclusion that the plaintiff was not in the intended line of flight of the defendant's ball.

The majority acknowledges that the Court of Appeals has held that a "golfer has a duty to give a timely warning to other persons within the foreseeable ambit of danger" that he or she is about to hit the ball, by yelling "fore" (*Jenks v McGranaghan,* 30 NY2d 475, 479 [1972]; *see Johnston v Blanchard,* 301 NY 599 [1950]; *Richardson v Muscato,* 176 AD2d 1227 [1991]; *McDonald v Huntington Crescent Club,* 152 AD2d 543 [1989]). *Jenks* further held that there is generally "no duty to warn

persons not in the intended line of flight *on another tee or fairway*" (*Jenks,* 30 NY2d at 479 [emphasis added], citing *Rose v Morris,* 97 Ga App 764, 104 SE2d 485 [1958] [no duty to warn a player 125 yards away on a different fairway]). Contrary to the majority's conclusion, the foreseeable zone of danger is not limited to the intended line of flight (*see Simpson v Fiero,* 237 App Div 62 [1932], *affd* 262 NY 461 [1933]; *accord Boozer v Arizona Country Club,* 102 Ariz 544, 547, 434 P2d 630, 633 [1967] [zone of danger includes someone standing 50 degrees from the intended line of flight]; *Bartlett v Chebuhar,* 479 NW2d 321 [Iowa 1992]).

Although a minority of jurisdictions subscribe to a view which limits the duty to warn to "only to those persons in the intended line of flight" (*Thomas v Wheat,* 143 P3d 767, 770 [Okla 2006]), New York does not subscribe to the minority view. In *Rinaldo v McGovern* (78 NY2d 729 [1991]), the Court of Appeals revisited the issue, and found that the duty to warn did not extend to persons outside the tee or fairway, on the ground that such persons in all probability would not have heard or heeded the warning; therefore, the possibility that giving the warning would have prevented the accident was remote. However, the Court of Appeals did not equate foreseeable zone of danger with intended line of flight.

The majority further concludes that the *Jenks* line of cases is no longer good law, on the ground that those cases are inconsistent with the doctrine of primary assumption of the risk. I disagree.

Pursuant to the doctrine of primary assumption of the risk, a participant in a sport assumes all commonly appreciated risks inherent the sport, but does not assume the risk of conduct which unreasonably increases the sport's inherent risks (*see Morgan v State of New York,* 90 NY2d 471, 485 [1997]). The purpose of applying the doctrine of primary assumption of the risk to sports activities is to "facilitate free and vigorous participation in athletic activities" (*Benitez v New York City Bd. of Educ.,* 73 NY2d 650, 657 [1989]). The question of primary assumption of the risk was, in fact, raised in *Jenks.* The Appellate Division, Third Department, found that a golfer does not assume the additional risk that another player will hit a ball without proper warning (*see Jenks v McGranaghan,* 37 AD2d 638, 639 [1971]; *Jenks v McGranaghan,* 32 AD2d 989, 990 [1969]).

In *Turcotte v Fell* (68 NY2d 432, 441 [1986]), the Court of Appeals found that "the rules of the sport . . . do not necessarily limit the scope of the professional's consent." In that case, the

plaintiff, a professional jockey, was injured when the defendant allegedly engaged in "foul riding" in violation of the rules of horse racing set forth in 9 NYCRR 4035.2 by crossing within the plaintiff's lane of travel. The action was dismissed based upon the doctrine of primary assumption of the risk. The Court found that by participating in the sport, the plaintiff consented to injury-causing events which "are known, apparent or reasonably foreseeable consequences of the participation," including violation of the rules of the game (*id.* at 439, citing *Maddox v City of New York,* 66 NY2d 270, 277-278 [1985]).

*Turcotte* is distinguishable from the instant case, on the ground that violation of the golfer's rule to yell "fore" gives the golfer no competitive advantage (*see Kramer v Arbore,* 309 AD2d 1208 [2003]), there was a reasonable expectation that the defendant golfer would give a warning, assuming that the plaintiff was in the foreseeable zone of danger, and the instant case did not involve professional players. In *Turcotte,* on the other hand, the plaintiff conceded that "there is a fine line between what is lawful and unlawful in the movement of a horse on the track during a race" (68 NY2d at 440-441). The Court noted that "bumping and jostling are normal incidents of the sport" to gain a competitive advantage (*id.* at 441). Further, the case involved professional participants, who are in a unique position to assess the risks of the sport. It is well-settled law that "a higher degree of awareness will be imputed to a professional than to one with less than professional experience in the particular sport" (*Maddox v City of New York,* 66 NY2d at 278).

In determining whether the violation of a rule or custom of the sport gives rise to liability, one must look to whether the violation unreasonably increases the risks of the sport, and is a proximate cause of the accident. Liability may be imposed where a warning is required in an effort to limit accidental injuries—such as a rule requiring that a turkey hunter not shoot until he or she clearly sees the whole turkey and is able to ascertain its gender, to avoid shooting a fellow hunter by mistake (*see Jacobs v Kent,* 303 AD2d 1000 [2003]).

Further, the courts have recognized that there are certain customs of a sport—the purpose of which is to insure that participants are aware of the risks—and if those customs are observed, there is no liability (*see Tindall v Ellenberg,* 281 AD2d 225 [2001]). *Tindall v Ellenberg* involved a fox hunt, where the defendant's horse kicked the plaintiff as the plaintiff was attempting to pass it. The court, in absolving the defendant of liability, noted that "the offending horse was clearly marked for its propensities with a red tail ribbon in conformity with the

custom of the sport" (*id.*). On the other hand, the violation of a rule or custom requiring a warning may raise questions of fact as to liability (*see Tuttle v TRC Enters., Inc.,* 38 AD3d 992 [2007] [failure to put out yellow flag warning of a stalled vehicle on a bicycle course]).

Here, there is a question of fact as to whether a violation of the rule or custom of the sport violated reasonable expectations (*see Tindall v Ellenberg,* 281 AD2d 225 [2001]), unreasonably increased the inherent risks of the sport (*see Morgan v State of New York,* 90 NY2d at 485), and constituted a proximate cause of the accident (*see Rinaldo v McGovern,* 78 NY2d 729 [1991]). The question of whether the injured plaintiff assumed the risk of his injury may still be determined by the jury, but may not be determined as a matter of law. Accordingly, the defendant's motion for summary judgment dismissing the complaint should have been denied.