OPINION OF THE COURT
Martin Schneier, J.
In this case the plaintiff mother, while visiting her infant daughter in an inpatient room in a hospital’s pediatric ward, was assaulted and injured by another mother and her two friends who were visiting an infant in the adjoining bed. The assault occurred after the nursing staff was made aware of threatening and menacing behavior of the assailants which escalated over the course of an hour and culminated in the plaintiff being assaulted in the presence of a security guard. The primary issue presented is whether the plaintiffs negligence claim is barred by the one-year statute of limitations for intentional torts?
This is apparently an issue of first impression in this state.
In this action to recover damages for personal injuries the defendant, Brookdale University Hospital & Medical Center (Brookdale) moves pursuant to CPLR 3212 for summary judgment dismissing the complaint on the grounds that: this action “is time-barred” by the “one-year statute of limitations for intentional torts”; that “Ms Bennett’s sudden, spontaneous and unexpected criminal assault was not foreseeable,” and that “Ms Bennett’s sudden, spontaneous and unexpected criminal conduct was a superseding intervening act that was not foreseeable.”
Plaintiffs commenced this negligence action on April 3, 2006 (the last day of the three-year statute of limitations for an “action to recover damages for a personal injury” under CPLR 214 [5]).
This case is now scheduled for trial on July 19, 2010.
Background
On April 3, 2003 plaintiff Evelyn Davis (Davis) was visiting her seven-year-old daughter, Shaakura, who had been admitted to Brookdale Hospital for treatment of her chronic asthmatic condition. At this time Novan Bennett (Bennett) and two friends, a man and a woman, were visiting Bennett’s daughter in the adjoining bed.
Davis testified at her deposition that Bennett began “acting very bizarre” by arguing loudly and cursing at her companions. *790 After approximately 30 minutes, Davis informed the head nurse about this behavior. Davis testified in her deposition as follows:
“Q. So just so I understand, at some point the head nurse appeared at the door and said something to the effect of, what was wrong?
“A. Yes.
“Q. And what, if anything, did you respond?
“A. I told her that the young lady was cursing like a sailor and acting very bizarre, like she needed to be reminded, because she was upsetting my daughter.
“Q. What do you mean cursing like a sailor?
“A. Just that she was using language that shouldn’t have been done in front of children.
“Q. I need to know what you are referring to specifically, and so you and I are both knowing what you are saying.
“A. Okay. When she was arguing with her boyfriend she was saying, fucking, bitch, you’re a bastard, mind you own business. Kiss my ass. Things like that.
“Q. And what do you mean by acting bizarre?
“A. She was pacing back and forth just throwing things around looking kind of like she was wired.
“Q. What things did she throw around?
“A. Her pocketbook, hat, glasses. Her daughter’s toys kept falling out of the crib.
“Q. Was she throwing the toys?
“A. Yes, she was throwing the toys. I don’t know if she was throwing at the boyfriend. It just was a lot of things going back and forth.
“Q. How long was this behavior going on before the head nurse appeared at the door?
“A. I would say about 30 minutes.” (Deposition at 43-45.)
The nurse manager, having been made aware of the situation, informed Davis that she would have her daughter transferred to another room.
Davis further testified that when the head nurse appeared in the room she was able to observe, firsthand, Bennett’s menacing behavior towards plaintiff. Davis testified at her deposition as follows:
“Q. When the head nurse came to the room, did the *791 woman say anything to you or to the head nurse?
“A. She was still cursing.
“Q. And who was she cursing at, if you know.
“A. She was cursing at me. She was just ranting.” (Deposition at 52.)
Notwithstanding the nurse manager’s decision to have plaintiffs infant daughter transferred to another room, another 30 minutes elapsed without any further action being taken.
Davis testified that she was at this time fearful of an imminent assault but could not leave her daughter. There was no telephone in the room nor did plaintiff have a cell phone. Davis testified at her deposition as follows:
“Q. Up until this point or at any point up to this point, did you have concern for your physical safety or the safety of your daughter
“A. Yes.
“Q. Tell me what concern you had?
“A. I was concerned that because the woman looked wired, that either she would jump on me. I couldn’t leave my daughter to get other assistance because I thought she might attack her.” (Deposition at 59.)
A Brookdale security guard, Wilfred Branch, heard loud screaming and came to the door of the room. Davis in her deposition testified as follows:
“Q. What was the next thing that happened with respect to this incident?
“A. Security looked in the door. Then I got up and I asked, security, could you remove this lady?
“Q. What if anything did the security person say to you?
“A. Security didn’t say anything. I said, you need to do your job she is acting bizarre, she is cursing, this is not acceptable.
“Q. What happened next?
“A. After that she cursed, started cursing at me, then she started making her threats towards my daughter.
“Q. So security is at the door looking into what is going on and you said, in sum and substance, that you needed assistance. What happened next?
“A. I asked security for help. I said, you need to help me because this woman is I don’t know what’s *792 going on with her, but you need to remove her. He just stood at the door. He never actually entered the room.” (Deposition at 62.)
Plaintiff testified that when Bennett and her two friends attacked her she held up her hands and cried for help yet the hospital’s security guard still stood there doing nothing. Davis in her deposition described the attack as follows:
“ms. rosen: When you say you held your hands up, you are indicating above your face?
“the witness: blocking, because she had a sharp object. I’m sitting in a way where I don’t want her to get towards my daughter, so I am just blocking her like this.
“A. Next thing I know, I am on the floor, the girlfriend and the boyfriend, one has my hands and one is holding me by my hair and I am asking for help. No one assisted me.
“Q. Who were you asking help from?
“A. I was saying help, security. I was just saying, help.
“Q. Where was the security?
“A. He was still at the door.
“Q. Where was the security guard while this was occurring?
“A. At the door.
“Q. And what if anything, did you observe him saying or doing?
“A. He didn’t say anything.
“Q. What is the next thing that happened?
“A. She came on top of me and I kicked her off with my feet. I went back, I felt pain in my hand and somehow I got loose from the girlfriend, and the boyfriend. I got up and ran to my daughter. And she took a pitcher and threw it at us.
“Q. Did any of those three people hit you or punch you in any part of your body?
“A. Yes.
“Q. When one was holding your hair and the other one was holding your arms, did the security officer come into the room?
“A. No.
“Q. Do you know whether or not the security officer *793 saw what happened?
“A. I asked him for help. Yes.
“Q. Were you able to see him?
“A. Yes.
“Q. What happened?
“A. He didn’t come into the room.
“Q. Did he do anything?
“A. No.
“Q. Was he standing at that time at the door visualizing at you or something else?
“A. He was just standing looking at what was going on.” (Deposition at 63-64, 148-150.)
Branch, the security guard, does not dispute any of plaintiffs testimony and confirms most of it. Branch testified at his deposition that when he arrived at the hospital room there were two groups of people in the room, one group being plaintiff, Evelyn Davis and her daughter, and the other group being No-van Bennett and her male and female friends. Branch testified that plaintiff “was not yelling.” However, the other group consisting of two women and a man were “all very agitated, screaming and cursing” (deposition at 278).
Branch, in his testimony, admitted that he did nothing for at least five minutes and allowed the menacing and threatening behavior to continue to escalate without calling for assistance on his two-way radio until after the assault had begun. Branch further testified that prior to the assault the assailants “turned on me” and “they started cursing me, cursing at me” yet he still did nothing (deposition at 79).
Discussion
The party moving for summary judgment must make a prima facie showing of entitlement to judgment as a matter of law, offering sufficient evidence to demonstrate the absence of a triable issue of fact (CPLR 3212 [b]; Alvarez v Prospect Hosp., 68 NY2d 320 [1986]; Zuckerman v City of New York, 49 NY2d 557 [1980]; Megafu v Tower Ins. Co. of N.Y., 73 AD3d 713 [2d Dept 2010]). However, once the moving party has satisfied this obligation, the burden then shifts; “the party opposing the motion must demonstrate by admissible evidence the existence of a factual issue requiring a trial of the action” (Zuckerman v City of New York, 49 NY2d at 560). “Mere conclusory assertions, devoid of evidentiary facts, are insufficient for this purpose, as *794 is reliance upon surmise, conjecture, or speculation” (Morgan v New York Tel, 220 AD2d 728, 729 [2d Dept 1995]).
Brookdale’s first argument for summary judgment is that the action is time-barred by the one-year statute of limitations for intentional torts. Although plaintiff does not allege an intentional tort, defendant asserts that “when applying a Statute of Limitations, courts look to the essence of the stated claim and not the label by which a plaintiff chooses to identify it” (Meyer v Shearson Lehman Bros., 211 AD2d 541, 542 [1st Dept 1995]). Brookdale argues that the essence of the claim in this case is assault and, therefore, the case is subject to the one-year statute of limitations.
In the context of an assault, the “essence of the claim” rule arises out of the well-settled law that there is no cause of action for negligent assault (Wrase v Bosco, 271 AD2d 440 [2d Dept 2000]). Furthermore, “once intentional offensive contact has been established, the actor is liable for assault and not negligence” (Panzella v Burns, 169 AD2d 824, 825 [2d Dept 1991]). The cases relied on by defendant, Locke v North Gateway Rest. (233 AD2d 578 [3d Dept 1996]) and Dykes v Valentino (147 AD2d 525 [2d Dept 1989]), are both cases where the plaintiff asserted claims for negligent assault.
On the other hand, “[a] single act or default causing a single injury may constitute a breach of different duties and give rise to causes of action based upon different grounds of liability and subject to different statutory periods of limitation” (Schram v Cotton, 281 NY 499, 507 [1939]). Thus, where “the challenged causes of action could be construed as based upon [defendant’s] negligent supervision of both its premises and employees,” the three-year statute of limitations for negligence applies (Jarvis v Nation of Islam, 251 AD2d 116, 117 [1998]).
In the instant case, there is no evidence of “intentional, offensive contact” on the part of Brookdale. The allegations against Brookdale are wholly in negligence and, therefore, are governed by the three-year statute of limitations.
Defendant’s second ground for summary judgment is that the assault by Bennett and her two friends upon the plaintiff was not foreseeable.
The defendant in support of its motion submits the affidavit of its expert, Donald H. Greene, who avers that “5. It is my opinion that there is no merit to plaintiffs claims against Brook-dale. The assault upon the plaintiff was not reasonably foreseeable.”
*795 The plaintiff in opposition to the motion submits the affidavit of her expert, Leslie N.A. Cole, Sr., who avers that
“5. It is my opinion within a reasonable degree of certainty that Defendant was negligent as a direct result of their ongoing omission and failure to undertake any necessary and proper responsive action prior to the physical assault committed upon Plaintiff EVELYN DAVIS thereby resulting in the injuries as stated in the Plaintiff’s Verified Bill of Particulars. In this regard, the nursing and security staff were fully cognizant of the verbal assault and menacing behavior which was being committed by the assailants and directed toward the Plaintiff EVELYN DAVIS for a substantial period of time prior to any physical assault being committed against Plaintiff EVELYN DAVIS by the same assailants. These omissions and failures . . . constituted negligence in failing to prevent a reasonably foreseeable and preventable incident.”
In light of the uncontroverted testimony that Bennett and her friends’ threatening and menacing behavior attracted the attention of hospital personnel, including a security guard, for as much as an hour prior to the assault, there is an issue of fact as to whether the assault was foreseeable.
Defendant’s third and final ground for summary judgment is that “Ms Bennett’s sudden, spontaneous and unexpected criminal conduct was a superseding intervening act that was not [ ] foreseeable.” The Court of Appeals has stated that
“[w]here third-party criminal acts intervene between defendant’s negligence and plaintiffs injuries, the causal connection may be severed, precluding liability (see, Kush v City of Buffalo, 59 NY2d 26, 33; Derdiarian v Felix Contr. Corp., 51 NY2d 308, 315). The criminal intervention of third parties may, however, be a ‘reasonably foreseeable’ consequence of circumstances created by the defendant (Kush v City of Buffalo, supra). While foreseeability is generally an issue for the fact finder, where only one conclusion can be drawn, proximate cause may be decided as a matter of law (see, e.g., Benitez v New York City Bd. of Educ., 73 NY2d 650, 659).” (Bell v Board of Educ. of City of N.Y., 90 NY2d 944, 946 [1997].)
In the instant case, the opposition papers are sufficient to support the plaintiffs argument that the assault upon her was *796 the culmination of threatening and menacing behavior by the three assailants which defendant’s hospital personnel and defendant’s hospital security staff were aware of for approximately one hour prior to the assault. Thus, there is an issue of fact as to whether the assault was reasonably foreseeable.
In addition, the opposition papers are sufficient to create an issue of fact as to whether the assault was a direct result of defendant’s alleged negligence. Accordingly, more than one conclusion may be drawn and proximate cause may not be decided as a matter of law.
Based on the aforesaid, it is clear that defendant has not met its prima facie burden of establishing entitlement to summary judgment as a matter of law as there are several triable issues of fact.
Conclusion
Based on the foregoing, the defendant Brookdale’s motion for summary judgment is denied.