706 A.2d 191

NICHOLAS ROSANIA, PLAINTIFF–APPELLANT, v. MARVIN CAR-
MONA, INDIVIDUALLY AND T/A NORTH JERSEY MARTIAL
ARTS ACADEMY, INC., A NEW JERSEY CORPORATION, DE-
FENDANTS–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 27, 1997—Decided February 13, 1998.

Before Judges HAVEY, LANDAU and NEWMAN.

*John D. Murray*, argued the cause for appellant.

*Steven A. Tritsch*, argued the cause for respondents (*Feinberg & Tritsch*, attorneys; *Mr. Tritsch*, on the brief).

The opinion of the court was delivered by

LANDAU, J.A.D.

Plaintiff Nicholas Rosania brought a Law Division action against defendants Marvin Carmona and his business corporation, North Jersey Martial Arts Academy, Inc. (NJMAA), seeking damages for a retinal detachment suffered during a karate proficiency test match in 1992 with the instructor, Carmona. Rosania alleged he was kicked violently in the face in violation of defendants' own written rule that prohibited targeting the head and any contact, even with a legal target area.

During the jury trial, Carmona denied making any contact during the match. He also disputed the applicability of a rule prohibiting targets above or below the front middle part of the body. The jury found on special interrogatory that Carmona did kick Rosania in the "eye" [sic]. However, it was not asked to determine whether Rosania had been informed of any change in the permissible target rules or whether such deviation from the published dojo (karate school) rules was a matter of common knowledge and acceptance. Charged that liability would only arise if the kick that caused Rosania's injury was reckless or intentional, the jury found no cause for action, and the case was dismissed. A new trial motion was denied.

Rosania appeals, urging that: (1) it was error to charge the jury that plaintiff had to prove defendants' actions were reckless rather than negligent; (2) the verdict of no recklessness was contrary to the weight of the evidence; and, (3) his motion for a new trial should have been granted.

Assuming that it was correct to apply a legal duty standard of reckless or intentional conduct under the facts of this case, our review of the record discloses that Rosania's second and third arguments are otherwise without merit. *R.* 2:11–3(e)(1)(E). The appeal hinges, therefore, upon an evaluation of the existence and nature of the duty owed by defendants to Rosania under the particular circumstances and nature of relationships in this sports injury action. Was the jury properly charged under the heightened recklessness standard enunciated in *Crawn v. Campo,* 136

*N.J.* 494, 643 *A.*2d 600 (1994)[1], or should it have been told to consider the case under a less demanding standard of fault?

We hold that in this commercial setting, the jury should have been charged that defendants owed a duty to patrons of the dojo not to increase the risks inherent in the sport of karate under the rules a reasonable student would have expected to be in effect at that dojo. If it found that targeting of the head was not permitted, or even that a change in the written rule was not unambiguously communicated to Rosania, the jury should have been charged that the correct scope of duty owed by the expert instructor and the academy was one of due care commensurate with: (1) foreseeability by the instructor of the high degree of hazard and likelihood of injury if an illegally targeted kick to the head made contact and, (2) the student's reasonable reliance upon the published dojo targeting rules. Only upon a jury finding, *grounded in the record,* that Rosania was made aware that the head was a permissible target, would the more stringent reckless or intentional conduct standard have been appropriate in this case. Accordingly, we reverse and remand.

## FACTS

Rosania enrolled at NJMAA in 1991. About 45 years old, he had earlier been skilled for approximately twenty years in different martial arts traditions, but had to begin anew to learn no-contact karate as practiced at NJMAA. He testified that he relied upon the printed dojo rules dated January 1992, which are reproduced in Appendix A hereto. The rules state that they are "mandatory and **must** be followed at all times." They require use of safety equipment including groin cup and head gear, and provide:

---

[1] In *Crawn,* the catcher in an informal softball game was injured in a collision with a base runner. The Supreme Court held that the "duty of care in establishing liability arising from informal sports activity should be based on a standard that requires, under the circumstances, conduct that is reckless or intentional." *Id.* at 508, 643 *A.*2d 600.

4. Legal target areas, with **full** control, **no contact**, are as follows: abdomen (stomach) area **only**.

5. **ILLEGAL** target areas: below the belt (groin, knees and shin), back area (kidneys), and to the head.

6. A Black Belt will always instruct class.

In order to be enrolled, Rosania read and signed a registration form which provided:

> I understand that all classes undertaken are at my own risk. I also understand the physical and athletic nature of the activities involved in the Art of Karate and the possibility of incurring injuries therein. I will not hold the School Directors Marvin Carmona and Debbie Carmona or anyone else connected to the school responsible for such injuries.

Rosania engaged in a sparring match with Carmona on April 18, 1992 as a test for promotion to green belt status (one to three levels above novice). According to Rosania, who was wearing protective head gear, Carmona kicked him "very hard very suddenly right across the face" resulting in a bloody nose and temporary loss of vision in one eye. Whether Rosania was in fact kicked in the face as he indicated and whether he bled were both vigorously disputed.

Shortly after the incident, Rosania sought medical assistance, initially telling doctors he was hit by a soccer ball. He was referred to an eye specialist for repair of a detached retina.

Carmona denied that the incident occurred, but also testified as to the applicable dojo rules, "I wouldn't particularly call it a no-blow-to-the-head rule. The face is a legal target area. You can go to the head. However, no contact or light contact is permissible." Another karate instructor called as an expert by defendants testified similarly as to a general understanding, irrespective of rules.

Deposition testimony of Carmona was read to the jury in which he gave this answer to a question as to what parts of the body are permissible targets: "[The] frontal part of the body would be a permissible target." He described the front part of the body as "the chest, the abdomen," ruling out anything below the abdomen as a permissible target. Respecting the frontal part of the face,

Carmona answered the question, "Is it a permissible target?," as follows: "Not to hit. But as a target area that would be considered a point." However on examination during trial, Carmona testified:

Q Could you tell the jury which one is it? Is the face a permissible target or is it as it says in the rules an illegal target? Which one is it?

A I would say that in my opinion that as long as there is no contact to the frontal part of the face that it can be a target area without any contact.

Q Was it a target area when you gave Mr. Rosania his test—

A No.

Q —on April 18, 1992?

A Say no.

Q Why? You just told the jury it was a target area.

A This is a testing environment. Mr. Rosania spars quite a few people and, you know, it's during testing all of your technique is going towards the midsection, period.

Q Mr. Carmona, do you understand my question, sir?

A Could you repeat it?

Q My question was very simple. During the test on April 18, 1992, when you sparred with the plaintiff, was his face a target area that you considered a legal target area?

A No.

Q It was not?

A No.

Rosania acknowledged on cross examination that there were also some "secondary" rules in effect. Those have not been included in the record provided by the parties.

Viewed in the best possible light for defendants, we believe that there was at least an ambiguity as to defendants' rules respecting permissible target areas and as to the rules governing the sparring incident in question. Accepting the rule reproduced in Appendix A, which was promulgated shortly before the incident, the only legal *target* was the "abdomen (stomach) area," "with full control, no contact," and it was "ILLEGAL" even to target areas below the belt, the back (kidneys) or the head. Rosania said he relied on the published rule and that his reason for enrolling in NJMAA was a desire to learn the safer form of martial art it taught.

On Rosania's motion for a new trial, the trial judge held that our decision in *Fantini v. Alexander,* 172 *N.J.Super.* 105, 410 *A.*2d 1190 (App.Div.1980) required that only the generally recognized standards of karate practice, rather than NJMAA's own rules, should be considered in formulating the applicable standard of duty owed by defendants to Rosania. The judge also placed heavy reliance upon Rosania's execution of the release acknowledging the dangers inherent in karate, and upon the protective equipment that demonstrated awareness of the possibility of contact. Based upon these factors, and upon a perceived need to avoid a "flood" of litigation, he deemed applicable the recklessness standard adopted in *Crawn.*

### Effect of the Rules and Fantini

We believe that the trial judge erred in applying *Fantini* to the facts of this case, thereby making irrelevant the dojo's rules, a critical factor in ascertaining the degree of risk to which Rosania had reason to believe he would be exposed. It is true that in *Fantini* we held that the practice in a given karate school did not establish a basis for expert testimony as to the generally recognized standard in the profession. *Fantini, supra,* 172 *N.J.Super.* at 111, 410 *A.*2d 1190. However, the existence of a "generally recognized standard" may be preempted in a commercial dojo setting by the promulgation of written rules which vary materially from the general rules. A customer, unless unambiguously informed that the general rules are in effect, should reasonably be entitled to assume that his instructor deems himself bound by the rules of the dojo rather than by the generalized rules. We believe that this principle is not altered by the fact that a release acknowledging risks of the sport has been executed, or that an awareness of risk is demonstrated by wearing equipment protective of non-target areas.

Barring consideration of NJMAA's house rules was pivotal in this case. Having rejected the customer/student's ability to rely on the rule of the dojo rather than a "generally recognized standard," Rosania was charged by the court with being "fully

aware of the particular risk". The extent of that "particular risk" would be materially altered in this case if Rosania, already familiar with forms of karate involving greater risks, enrolled at NJMAA with the expectation that matches, especially with one's instructor, were to be conducted under the highly limited targeting and contact restrictions of that dojo. Implicit in such reliance would be the expectation that a black belt instructor, required to remain in control, and prohibited from targeting areas other than the abdomen and from making *any* contact, does not present a risk for delivering a violent kick to the face.

It is under this basis for reasonable risk expectation that the appropriate standard of duty owed by defendants to Rosania should have been assessed. As noted above, by his reliance on the "generalized standard" rather than the rules of the dojo, the trial judge concluded that Rosania was fully aware of the particular risks, and so resolved the duty issue by applying *Crawn's* reckless or intentional standard rather than the conventional negligence standard for liability.

### Duty

The issue of whether defendants owed a legal duty to Rosania and the scope of that duty is a matter of law. *Clohesy v. Food Circus Supermarkets, Inc.*, 149 *N.J.* 496, 502, 694 *A.*2d 1017 (1997) (citation omitted). In *Snyder v. American Ass'n of Blood Banks*, 144 *N.J.* 269, 676 *A.*2d 1036 (1996), the Supreme Court summarized the nature of the inquiry:

> The determination of the existence of a duty ultimately is a question of fairness and policy. *Crawn v. Campo*, 136 *N.J.* 494, 501, 643 *A.*2d 600 (1994); *Dunphy v. Gregor*, 136 *N.J.* 99, 108, 642 *A.*2d 372 (1994); *Kelly v. Gwinnell*, 96 *N.J.* 538, 544, 476 *A.*2d 1219 (1984); *Goldberg v. Housing Auth.*, 38 *N.J.* 578, 583, 186 *A.*2d 291 (1962). An important, although not dispositive consideration, is the foreseeability of injury to others from the defendant's conduct. *Carter Lincoln–Mercury v. EMAR Group*, 135 *N.J.* 182, 194, 638 *A.*2d 1288 (1994). Also important are the nature of the risk posed by the defendant's conduct, the relationship of the parties, and the impact on the public of the imposition of a duty of care. *Dunphy, supra,* 136 *N.J.* at 108, 642 *A.*2d 372.

> [*Id.* at 292, 676 *A.*2d 1036.]

Significantly, the Supreme Court also included in these policy considerations the degree to which the defendant had, by promulgation of rules, invited persons and entities with which it dealt to rely on the rules and standards it set. *Snyder, supra,* 144 *N.J.* at 293–94, 676 *A.*2d 1036. The present situation is analogous. We do not presume to modify or alter in any way the heightened recklessness standard adopted in *Crawn* for determining liability between amateur participants in informal competitive sports. Indeed, we recognize, as did the trial judge, that some courts have gone further, applying the heightened recklessness standard even to many instructor-student situations because of a strong social policy to facilitate free and aggressive participation in athletic activities. *E.g., Morgan v. State,* 90 *N.Y.*2d 471, 662 *N.Y.S.*2d 421, 426, 685 *N.E.*2d 202, 207 (1997); *Vendura v. Fasano,* 236 *A.D.*2d 465, 653 *N.Y.S.*2d 144 (1997); *Bushnell v. Japanese–American Religious and Cultural Center,* 43 *Cal.App.*4th 525, 50 *Cal.Rptr.*2d 671 (1996); *Regents of the Univ. of Cal. v. Superior Court,* 41 *Cal.App.*4th 1040, 48 *Cal.Rptr.*2d 922, 925 (1996).

However, a more case-specific theme dominates the cases. In *Benitez v. New York City Board of Education,* 73 *N.Y.*2d 650, 543 *N.Y.S.*2d 29, 541 *N.E.*2d 29 (1989), it was held that responsible parties must exercise ordinary reasonable care to protect student athletes from "unassumed, concealed or *unreasonably increased risks*". *Id.* 543 *N.Y.S.*2d at 33, 541 *N.E.*2d at 33 (emphasis added). Instructors and coaches owe a duty of care to persons in their charge not to increase the risks over and above those inherent in the sport. *See Knight v. Jewett,* 3 *Cal.*4th 296, 11 *Cal.Rptr.*2d 2, 13–14, 834 *P.*2d 696, 707–08 (1992); *Galardi v. Seahorse Riding Club,* 16 *Cal.App.*4th 817, 20 *Cal.Rptr.*2d 270, 273 (1993); *Machowski v. Gallant,* 234 *A.D.*2d 933, 651 *N.Y.S.*2d 832 (1996).

In *Crawn,* the Supreme Court took notice that sometimes, as between equally situated participants in competitive contact sports, "practices that technically violate safety rules become part of the accepted behavior of a sport." *Crawn, supra,* 136 *N.J.* at 506, 643 *A.*2d 600 (quoting Daniel E. Lazaroff, *Torts & Sports:*

*Participant Liability to Co–Participants for Injuries Sustained During Competition,* 7 *U. Miami Ent. & Sports L.Rev.* 191, 223 (1990)). Nonetheless, as recognized by the New York Court of Appeals, "[r]elieving an owner or operator of a sporting venue from liability for inherent risks of engaging in a sport is justified when a consenting participant is aware of the risks; has an appreciation of the nature of the risks; and voluntarily assumes the risks...." *Morgan, supra,* 662 *N.Y.S.2d* at 426, 685 *N.E.2d* at 207. It is a different story when the operator or instructor increases the risks above those inherent in the activity by failing to communicate a material change in the rules of engagement in a manner clearly understood by a reasonable student.

■ Utilizing a case-specific analysis appropriate to the present facts, and informed by the policy considerations enunciated in *Snyder, supra,* 144 *N.J.* at 292–94, 676 *A.2d* 1036, we think it evident that if the jury found the risks inherent in the karate match between Rosania and his instructor were materially increased beyond those reasonably anticipated based upon the published dojo rules, it should not have been charged to consider defendants' fault under the heightened *Crawn* standards, but under the ordinary duty owed to business invitees, including exercise of care commensurate with the nature of the risk, foreseeability of injury, and fairness in the circumstances. *See Kuzmicz v. Ivy Hill Park Apartments, Inc.,* 147 *N.J.* 510, 515, 688 *A.2d* 1018 (1997). It does not unduly inhibit pursuit of the karate sport, nor does it invite frivolous litigation, to require instructors in a commercial setting to communicate unambiguously the applicable rules of engagement and for them to avoid negligently violating the rules so communicated.

Reversed and remanded for a new trial.