NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2497-19

MORGAN DENNEHY,

      Plaintiff-Appellant,

v.

EAST WINDSOR REGIONAL
BOARD OF EDUCATION,
HIGHTSTOWN HIGH SCHOOL,
JAMES W. PETO, TODD M.
PETO, and DEZARAE FILLMYER,

      Defendants-Respondents.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| **September 27, 2021** |
| **APPELLATE DIVISION** |

Argued September 1, 2021 – Decided  September 27, 2021

Before Judges Alvarez, Geiger and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-1333-17.

Brian A. Heyesey argued the cause for appellant (Szaferman, Lakind, Blumstein & Blader, PC, attorneys; Brian A. Heyesey, on the briefs).

Timothy P. Beck argued the cause for respondents (DiFrancesco, Bateman, Kunzman, Davis, Lehrer & Flaum, PC, attorneys; Timothy P. Beck, on the brief).

The opinion of the court was delivered by

MITTERHOFF, J.A.D.

Plaintiff Morgan Dennehy appeals from a February 18, 2020 order denying her motion for reconsideration of a previous order granting summary judgment to defendants. On appeal, plaintiff principally argues that the motion judge erroneously applied the heightened recklessness standard set forth in Crawn v. Campo, 136 N.J. 494 (1994), to the conduct of a high school coach. We agree, reverse, and remand for proceedings consistent with this opinion.

We discern the following material facts from the record. In 2012, the East Windsor Regional Board of Education (EWRBOE) decided to renovate the athletic field that would include the installation of a synthetic turf field, stands, lighting, and a new scoreboard that would maximize the athletic opportunities at Hightstown High School (the School). EWRBOE hired the Edwards Engineering Group, Inc. to design and develop the plans for the renovation of the athletic field and facility at the School. The design and bid specifications included a twenty-foot "ball stopper" system at the ends of the synthetic turf field. There is no requirement that protective netting be installed around synthetic turf fields, but the feature "enhances the maximum utilization of the athletic field for virtually every sport in which a ball is involved."[1] The

[1] In that regard, the ball stopper promotes "athlete safety . . . by preventing ball interference between simultaneous games or practices."

A-2497-19

next year, EWRBOE approved and financed the construction of the new athletic facility, which included a twenty-foot ball stopper.

In February 2015, Gary Bushelli, the then-Athletic Director, hired Dezarae Fillmyer as the varsity field hockey coach. In July 2015, following Bushelli's departure, James Peto was appointed as the Athletic Director of the School. Prior to his appointment, Peto served as the Turf Field Coordinator. Peto's official responsibilities as the Athletic Director included "the scheduling of all high school . . . intramural and interscholastic athletic events including facilities usage" and arranging "field and gym practice schedules." As the Athletic Director, Peto appointed his brother, Todd Peto,[2] as the new Turf Field Coordinator because "[n]obody else wanted the position."

That month, Peto observed plaintiff and other members of the field hockey team practicing in the "D-zone," an area between the renovated turf field and the track, which is separated by the ball stopper. At that time, the football team was practicing on the field. Because Peto was concerned that the football team could start kicking field goals, he advised plaintiff to be "cautious" and to "stay behind the net so nothing happens."

---

[2] Hereinafter, we refer to Todd Peto as "Todd" to avoid confusion with his brother.

Pursuant to his official responsibilities, Peto created the weekly turn practice schedule that was sent to the coaches. On Wednesday September 9, 2015, the boys' soccer team was to use the turf field for practice from 2:30 p.m. to 3:45 p.m. The girls' field hockey team was to use the field after 3:45 p.m.

At approximately 3:00 p.m. on September 9, 2015, contrary to Peto's schedule, some members of the girls' field hockey team were participating in corner drills in the D-zone, while the other members of the team were located behind the ball stopper observing the drills. At that time, the boys' soccer team was practicing on the adjacent field and plaintiff observed several soccer balls vault the ball stopper. Plaintiff, who was the starting goalie, was not involved in the corner drills. After the team had finished the corner drills, plaintiff asked Fillmyer if she could take a shot on goal. Fillmyer agreed because plaintiff rarely had the opportunity to shoot on goal. Plaintiff left the area directly behind the ball stopper, which allegedly placed her more squarely in the zone of danger of being hit. After plaintiff finished shooting, she was struck in the back of the neck, near the base of her skull, by an errant soccer

A-2497-19

ball that went over the ball stopper. Plaintiff was later taken to the hospital and was diagnosed with a concussion.[3]

In June 2017, plaintiff filed a complaint against defendants alleging negligence (count one) and negligence by EWRBOE and the School in its hiring, retaining, training and supervision of its employees (count two). In August 2017, defendants filed an answer. In July 2019, defendants moved for summary judgment. That same month, plaintiff filed an opposition.

On September 24, 2019, following oral argument,[4] the motion judge entered an order granting summary judgment to defendants.[5] The motion judge concluded, citing Crawn and Schick v. Ferolito, 167 N.J. 7 (2001), that "the recklessness standard must apply and there is no merit to the argument that a lesser standard is applicable simply because [p]laintiff was not engaged

---

[3] Plaintiff allegedly suffers from Post-Concussive Syndrome, Post-traumatic Stress Disorder, and Major Depressive Disorder as a result of this incident. In addition, plaintiff purportedly attempted suicide in September 2017.

[4] At oral argument, the parties consented to extend discovery for the limited purpose of disclosing documents relating to her psychiatric and post-concussion conditions.

[5] The judge concluded that the EWRBOE and the School were entitled to design or plan immunity, N.J.S.A. 59:4-64, discretionary immunity, N.J.S.A. 59:2-3(c), and immunity under N.J.S.A. 59:4-2. Because plaintiff did not brief these issues, we deem them waived. See N.J. Dep't of Env't Prot. v. Alloway Twp., 438 N.J. Super. 501, 506 n.2 (App. Div. 2015) ("An issue that is not briefed is deemed waived upon appeal.").

in a game at the time that she was injured." Applying that standard, the judge found that "there [was] no evidence of any recklessness, or [a] conscious decision that [Fillmyer] made knowing that it would cause danger or harm to [p]laintiff." She reasoned that "it [was] undisputed that this was an area of the field with the ball stopper and [p]laintiff was injured by an errant ball that vaulted the ball stopper." Because there was "no evidence" that Fillmyer's conduct was reckless, she concluded summary judgment was appropriate.

Plaintiff timely moved to reconsider the order granting summary judgment to defendants. On February 18, 2020, following oral argument, the judge entered an oral decision. The judge reaffirmed her original reasoning that the Crawn recklessness standard applies, noting that there was "no authority that would allow this [c]ourt to consider that a different standard would be more appropriate." The judge relied on her initial analysis and, accordingly, denied the motion for reconsideration. The judge issued an accompanying written order. This appeal ensued, which focuses solely on which standard to apply to Fillmyer's conduct.

Our standard of review of an order denying reconsideration is deferential. "Motions for reconsideration are governed by Rule 4:49-2, which provides that the decision to grant or deny a motion for reconsideration rests within the sound discretion of the trial court." Pitney Bowes Bank, Inc. v.

ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015). Reconsideration "is not appropriate merely because a litigant is dissatisfied with a decision of the court or wishes to reargue a motion." Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010). Rather, reconsideration

> should be utilized only for those cases which fall into that narrow corridor in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence.
>
> [Ibid. (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).]

Thus, we will not disturb a trial judge's denial of a motion for reconsideration absent "a clear abuse of discretion." Pitney Bowes Bank, Inc., 440 N.J. Super. at 382 (citing Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994)).

In Crawn, the Court considered the extent of a sports participant's duty to avoid inflicting physical injury on another player. 136 N.J. at 496-97. There, the plaintiff was playing catcher in an informal softball game. Id. at 498. He sustained an injury when a base runner slid into home plate. Id. at 498-99. The Court held that "the duty of care applicable to participants in informal recreational sports is to avoid the infliction of injury caused by reckless or intentional conduct." Id. at 497.

A-2497-19

In reaching the conclusion that a co-participant had no liability in the absence of reckless or intentional conduct, the Court relied on two policy considerations that supported that standard of care. Id. at 501. First, the benefit to be derived from promoting "vigorous participation in athletic activities[,]" and second, the need to avoid the "flood of litigation" that would be generated by participation in recreational sports if the standard were to be set at ordinary common-law negligence. Ibid. The Court determined that those two policies outweighed the harm of immunizing conduct that would otherwise expose the responsible party to liability. Id. at 502-04. In determining that the recklessness standard should apply, rather than the common-law standard of ordinary negligence, the Court observed that the "rough-and-tumble of sports" between two equally situated participants "should not be second-guessed in courtrooms." Id. at 508.

Four years after Crawn, this court analyzed the standard of care for a sports instructor in Rosania v. Carmona, 308 N.J. Super. 365 (App. Div. 1998). In that case, the plaintiff, an adult participant and invitee at a commercial martial arts academy, was undergoing a proficiency test against his instructor. Id. at 368-69. The instructor, who owned the academy, kicked the plaintiff in the face, causing the plaintiff's retina to detach. Id. at 369. The academy had rules against certain contact, specifically contact to the head area. Ibid.

This court held that "[i]nstructors and coaches owe a duty of care to persons in their charge not to increase the risks over and above those inherent in the sport." Id. at 373. We determined that:

> if the jury found the risks inherent in the karate match between [plaintiff] and his instructor were materially increased beyond those reasonably anticipated based upon the published dojo rules, it should not have been charged to consider defendants' fault under the heightened Crawn standards, but under the ordinary duty owed to business invitees, including exercise of care commensurate with the nature of risk, foreseeability of injury, and fairness in the circumstances.
>
> [Id. at 374.]

We made clear that our decision did "not presume to modify or alter in any way the heightened recklessness standard adopted in Crawn for determining liability between amateur participants in informal competitive sports." Id. at 373.

Under the circumstances presented in this case, we conclude the motion judge erred in applying the heightened recklessness standard. Indeed, the cases that have subsequently applied the Crawn reckless conduct standard involved circumstances where one player collided with, or somehow directly injured another player, in the course of the actual sporting activity. See, e.g., Schick, 167 N.J. at 10, 19 (applying recklessness standard when a golfer hit an unannounced and unexpected second tee shot, or "mulligan," after all members

9

of the foursome had already teed off); Obert v. Baratta, 321 N.J. Super. 356, 358-60 (App. Div. 1999) (applying recklessness standard when softball player sued teammate for injuries sustained when the two collided while in pursuit of fly ball during informal intra-office game); Calhanas v. S. Amboy Roller Rink, 292 N.J. Super. 513, 522-23 (App. Div. 1996) (applying recklessness standard where roller skater suffered broken leg from collision with another skater).

In this case, however, and unlike the facts in Crawn, Schick, Obert, or Calhanas, Fillmyer was not a co-participant. Those decisions apply the recklessness standard in circumstances involving two equally situated participants where one directly injured the other during the course of the sporting activity itself. See Schick, 167 N.J. at 19 ("[Recklessness or intentional conduct] is the pertinent standard for assessing the duty of one sports participant to another concerning conduct on golf courses and tennis courts, as well as conduct on basketball courts and ice rinks.") (emphasis added). None apply Crawn to situations where, as here, the claim is based upon a coach's failure to properly supervise and oversee the participants of the sport he or she was tasked with instructing.

We are also unpersuaded by plaintiff's argument that Rosania applies in this case for two reasons. First, in Rosania, plaintiff and his marital arts instructor were co-participants in a proficiency exam that involved sparring.

10

A-2497-19

308 N.J. Super. at 369. By contrast, Fillmyer was supervising practice and was not a co-participant. Moreover, the student who kicked the soccer ball that struck plaintiff was participating in a separate practice session in a different sport on a different field.

Second, the panel's view in <u>Rosania</u> was informed by cases decided by the New York Court of Appeals, which considered the liability of an owner or operator of a sporting venue ("[r]elieving an owner or operator of a sporting venue from liability from inherent risks of engaging in a sport is justified when a consenting participant is aware of the risks; has an appreciation of the nature of the risks; and voluntarily assumes the risks. . . ."). <u>Id.</u> at 374 (quoting <u>Morgan v. State</u>, 662 N.Y.S. 2d 421, 426 (1997)). The panel then explained that "[i]t is a different story when the operator or instructor increases the risks above those inherent in the activity by failing to communicate a material change in the rules of engagement in a manner clearly understood by a reasonable student." <u>Ibid.</u>

For those reasons, we need not consider applying a new standard to the conduct of instructors or coaches. Fillmyer is a public employee, and her duties, responsibilities, and immunities are clearly established in the New Jersey Tort Claims Act. N.J.S.A. 59:1-1 to 12-3. Generally, "a public employee is liable for injury caused by this act or omission to the same extent

11

as a private person." N.J.S.A. 59:3-1(a). Public employees and public entities can assert a defense if a TCA immunity applies. Public employees "ha[ve] the burden to plead and prove [an] immunity under the TCA.'" Maison v. N.J. Transit Corp., 245 N.J. 270, 298 (2021) (alterations in original) (quoting Leang v. Jersey City Bd. of Educ., 198 N.J. 557, 582 (2009)).

To the extent we have not addressed any of the parties' remaining arguments, we conclude that they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12                                            A-2497-19