SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**Morgan Dennehy v. East Windsor Regional Board of Education**
**(A-36-21) (086350)**

**Argued September 13, 2022 -- Decided October 26, 2022**

**FISHER, P.J.A.D. (temporarily assigned), writing for a unanimous Court.**

In this appeal, the Court considers the standard of care that should apply to a coach's decision to allow a high school field hockey team to practice in an area adjacent to an ongoing soccer practice.

On September 9, 2015, defendant Dezarae Fillmyer, who coached the Hightstown High School girls' field hockey team, instructed players to warm up in an area adjacent to the school's turf field, where the boys' soccer team was practicing. Plaintiff Morgan Dennehy, a member of the field hockey team, was struck at the base of her skull by an errant soccer ball, allegedly causing the injuries of which she complains in this lawsuit against Fillmyer, the school, and others.

The trial court granted summary judgment in favor of defendants, holding that plaintiff was required to show defendants' acts or omissions rose at least to the degree of recklessness described in Crawn v. Campo, 136 N.J. 494, 507-08 (1994), and Schick v. Ferolito, 167 N.J. 7, 18-20 (2001). The Appellate Division reversed, holding that a simple negligence standard applied. 469 N.J. Super. 357, 365 (App. Div. 2021). The Court granted certification. 249 N.J. 550 (2022).

**HELD:** The coach's acts and omissions alleged here are governed by a simple negligence standard rather than the heightened standard of recklessness the Court applied when one participant injures another during a recreational activity.

1. In Crawn, the Court considered what a plaintiff-catcher was required to show to prove the liability of the defendant-runner, who collided with the plaintiff; the Court concluded "that the duty of care applicable to participants in informal recreational sports is to avoid the infliction of injury caused by reckless or intentional conduct." 136 N.J. at 497-98 (emphasis added). Later, in Schick, the Court held that "the heightened standard of care for causes of action for personal injuries occurring in recreational sports should not depend on which sport is involved and whether it is commonly perceived as a 'contact' or 'noncontact' sport." 167 N.J. at 18-19. The

1

Court reaffirmed that the heightened standard constituted "the pertinent standard" -- regardless of the athletic endeavor -- when "assessing the duty of one sports participant to another." Id. at 19 (emphasis added). (pp. 4-6)

2. Unlike those cases and later cases in which the heightened standard has been applied, Fillmyer was not actively participating in the recreational activity at issue; short of that, there is no basis upon which a factfinder could conclude Fillmyer was participating within the meaning of Crawn and Schick. Even if Fillmyer was actively participating in the practice when plaintiff was injured, it is clear from the record that plaintiff was not injured by any activity associated with field hockey. Plaintiff was struck by a soccer ball that came from another field. That undisputed fact further demonstrates that plaintiff's claim is based only on Fillmyer's supervisory role in selecting the timing and location of the team's informal practice. The policies that generated the Court's decisions in Crawn and Schick do not support the application of a recklessness standard here. The essence of plaintiff's theory of liability -- that Fillmyer chose the wrong place and an unpropitious time to commence practice -- is no different than the decisions that might be made by a biology teacher taking a class out to study marine life at the beach. In these and other similar settings, parents have the right to expect that teachers and coaches will exercise reasonable care when in charge of their children. (pp. 6-9)

**AFFIRMED and REMANDED to the trial court for further proceedings.**

**CHIEF JUSTICE RABNER; JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, and FASCIALE; and JUDGE SABATINO (temporarily assigned) join in JUDGE FISHER's opinion.**

SUPREME COURT OF NEW JERSEY
A-36 September Term 2021
086350

Morgan Dennehy,

Plaintiff-Respondent,

v.

East Windsor Regional
Board of Education,
Hightstown High School,
James W. Peto, Todd M.
Peto, and Dezarae Fillmyer,

Defendants-Appellants.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
469 N.J. Super. 357 (App. Div. 2021).

Argued                          Decided
September 13, 2022        October 26, 2022

Timothy P. Beck argued the cause for appellants
(DiFrancesco, Bateman, Kunzman, Davis, Lehrer &
Flaum, attorneys; Timothy P. Beck, on the briefs).

Brian A. Heyesey argued the cause for respondent
(Szaferman, Lakind, Blumstein & Blader, attorneys;
Brian A. Heyesey, of counsel and on the brief).

Kayla Elizabeth Rowe argued the cause for amicus curiae
New Jersey Civil Justice Institute (New Jersey Civil

Justice Institute, attorneys; Kayla Elizabeth Rowe, of counsel and on the brief).

Justin Lee Klein argued the cause for amicus curiae New Jersey Association for Justice (Law Office of Justin Lee Klein, attorneys; Justin Lee Klein, of counsel and on the brief).

JUDGE FISHER (temporarily assigned) delivered the opinion of the Court.

In this appeal, we consider the standard of care that should apply to a coach's decision to allow a high school field hockey team to practice in an area adjacent to an ongoing soccer practice. We conclude that the coach's acts and omissions alleged here are governed by a simple negligence standard rather than the heightened standard of recklessness we applied in Crawn v. Campo, 136 N.J. 494 (1994), and Schick v. Ferolito, 167 N.J. 7 (2001), when one participant injures another during a recreational activity.

In 2015, plaintiff Morgan Dennehy was a seventeen-year-old high school senior and a member of Hightstown High School's girls' field hockey team coached by defendant Dezarae Fillmyer. The school's athletic director had arranged afterschool sports practices so that the field hockey team's practice on September 9, 2015, would begin when the boys' soccer team's use of the turf field ended at 3:45 p.m. At 3:00 p.m., Fillmyer instructed the offensive players on her field hockey team to begin warming up in "the D-zone," an area

2

between the "continuous athletic field[s]" and the turf field. A few years earlier, a twenty-foot-high ball stopper net had been installed at the ends of the turf field to prevent "ball interference" in other areas. While the offensive players on the field hockey team were warming up, at least two soccer balls from the soccer practice "landed within the . . . D-zone near [the] field hockey players."

Because she was a goalie, plaintiff had not been participating in the informal activities in the D-zone. She asked if she could take a shot on goal and Fillmyer gave her approval. As plaintiff was taking a shot, another errant soccer ball cleared the ball stopper and struck the base of plaintiff's skull, allegedly causing the injuries of which she complains in this lawsuit.

Plaintiff filed this suit against Fillmyer, the board of education, the school, its athletic director, and others. Plaintiff asserted that she sustained injuries through defendants' alleged failures to supervise; prevent potential and foreseeable dangerous conditions; provide appropriate safeguards; and post suitable warnings of potentially dangerous conditions. After the completion of discovery, defendants moved for summary judgment. In opposing summary judgment, plaintiff argued defendants owed her a duty of reasonable supervisory care. Agreeing with defendants, the trial judge held that plaintiff was required to show defendants' acts or omissions rose at least to the degree

3

of recklessness described in Crawn, 136 N.J. at 507-08, and Schick, 167 N.J. at 18-20.  Applying that heightened standard, the trial judge determined that the allegations could not support a claim of intentional or reckless conduct.

Plaintiff appealed, challenging only the judge's determination that a recklessness standard applied to Fillmyer's alleged acts and omissions.  In a published opinion, the Appellate Division reversed, finding the Crawn recklessness standard was inapplicable because Fillmyer "was not a co-participant" and holding that a simple negligence standard applied because plaintiff's claim was that Fillmyer failed to properly "supervise and oversee the participants of the sport" assigned to her for instruction.  Dennehy v. E. Windsor Reg'l Bd. of Educ., 469 N.J. Super. 357, 365 (App. Div. 2021).

We granted certification, 249 N.J. 550 (2022), and now reject Fillmyer's contention that she was entitled to the application of a recklessness standard in these circumstances, a position supported by the New Jersey Civil Justice Institute as amicus curiae.  We instead agree with plaintiff's argument, which the New Jersey Association for Justice similarly urges, that her claims should be governed by a simple negligence standard.

In Crawn, we considered what a plaintiff-catcher -- injured during a regularly scheduled but informal softball game -- was required to show to prove the liability of the defendant-runner, who collided with the plaintiff

4

while attempting to score. 136 N.J. at 497-98. In rejecting application of either a simple negligence standard on the one hand or complete immunity on the other, we recognized two policy reasons -- "the promotion of vigorous participation in athletic activities" and the avoidance of "a flood of litigation," id. at 501 -- and concluded "that the duty of care applicable to participants in informal recreational sports is to avoid the infliction of injury caused by reckless or intentional conduct," id. at 497 (emphasis added). That standard, we noted, was "driven by the perception that the risk of injury is a common and inherent aspect of informal sports activity." Id. at 500.

Later, in Schick, perceiving that "Crawn may have left open the question of whether the recklessness standard should apply generally to conduct in recreational sporting contexts, including golf," 167 N.J. at 10-11, we considered whether Crawn's recklessness standard should apply to a defendant-golfer whose "unannounced and unexpected . . . 'mulligan'" struck another golfer. Id. at 10. Reiterating our concern in Crawn -- that "a legal duty of care based on the standard of what, objectively, an average reasonable person would do under the circumstances is illusory, and is not susceptible to sound and consistent application on a case-by-case basis," id. at 13 (quoting Crawn, 136 N.J. at 507-08) -- we held that "the heightened standard of care for causes of action for personal injuries occurring in recreational sports should

5

not depend on which sport is involved and whether it is commonly perceived as a 'contact' or 'noncontact' sport." Id. at 18-19. We reaffirmed that the heightened standard "represented the enunciation of a more modern approach to our common law in actions for personal injuries that generally occur during recreational sporting activities" and constituted "the pertinent standard" -- regardless of the athletic endeavor -- when "assessing the duty of one sports participant to another." Id. at 19 (emphasis added).

In Schick, we recognized that the recklessness standard applied to more than just those sporting and recreational activities involved there and in Crawn, and we more recently applied the recklessness standard to a collision between a skier and a snowboarder. See Angland v. Mountain Creek Resort, Inc., 213 N.J. 573, 590 (2013). The Appellate Division has found the heightened standard applicable to a claim based on an injury occurring during a lacrosse game, C.J.R. v. G.A., 438 N.J. Super. 387, 398 (App. Div. 2014), as well as injuries resulting from collisions between skydivers, Dare v. Freefall Adventures, Inc., 349 N.J. Super. 205, 214 (App. Div. 2002), and between roller skaters, Calhanas v. S. Amboy Roller Rink, 292 N.J. Super. 513, 523 (App. Div. 1996).

But, unlike all those cases, Fillmyer was not actively participating in the recreational activity at issue. Plaintiff alleges tortious conduct by Fillmyer

6

only as to her choice of the location of the impromptu workout prior to the scheduled practice and her failure to supervise her players as they waited their turn on the turf field. Fillmyer argues that Crawn's recklessness standard should be extended to apply to the acts and omissions of instructors and coaches like herself regardless of the circumstances.

With the exception of Rosania v. Carmona, 308 N.J. Super. 365 (App. Div. 1998), which we will discuss in greater detail momentarily, our case law has not focused on a coach or instructor actively participating in the sporting activity when the injury occurred. Nor do we accept the invitation here to opine broadly on the circumstances that may generate liability for coaches or instructors or to ascertain when their acts or omissions should be assessed by a standard other than simple negligence. We choose instead to define the standard that applied to Fillmyer under the limits of the allegations presented by plaintiff, and we leave for another time the fixing of appropriate standards to govern the myriad ways in which the multi-faceted roles played by coaches and instructors may cause an injury to a participant.

And so, it is appropriate to start our analysis by stating what is not before us. This case, for example, does not present facts like those considered by the Appellate Division in Rosania, where a karate instructor injured a student by kicking him in the head during a sparring match. Id. at 369. The

7

court there held that the heightened standard for co-participants would apply -- focusing on the instructor's injury-causing conduct rather than his position or title -- if it could be shown that kicking was permitted by the dojo's rules and made known to the plaintiff. Id. at 368.

We reject Fillmyer's argument that she was "participating" in her team's informal pre-practice warmups in the same sense that the karate instructor in Rosania was "participating" when he kicked his student. There is no allegation that Fillmyer was wielding a field hockey stick or otherwise actively engaged in the preliminary practice with her players when plaintiff's injury occurred; short of that, there is no basis upon which a factfinder could conclude Fillmyer was participating within the meaning of Crawn and Schick.

Even if Fillmyer was actively participating in the practice when plaintiff was injured, it is clear from the record that plaintiff was not injured by a batted field hockey ball, an errant swing of a field hockey stick, or any other activity associated with that sport. Plaintiff was struck by a soccer ball that came from another field. That undisputed fact further demonstrates that plaintiff's claim is based only on Fillmyer's supervisory role in selecting the timing and location of the team's informal practice.

In accepting the truth of plaintiff's allegations -- because we are reviewing a summary judgment, see Brill v. Guardian Life Ins. Co. of Am.,

142 N.J. 520, 540 (1995) -- we conclude the policies that generated our decisions in Crawn and Schick do not support the application of a recklessness standard to Fillmyer's choices of whether, where, and when plaintiff and her teammates were to participate in drills prior to the practice scheduled by the athletic director. The recognition of a simple negligence standard in these circumstances does not place an unreasonable burden "on the free and vigorous participation in sports by our youth," Crawn, 136 N.J. at 501 (quoting Nabozny v. Barnhill, 334 N.E.2d 258, 260 (Ill. App. Ct. 1975)), nor is it likely to flood our courts with litigation. Indeed, the essence of plaintiff's theory of liability -- that Fillmyer chose the wrong place and an unpropitious time to commence practice -- is no different than the decisions that might be made by a biology teacher taking a class out to study marine life at the beach. In these and other similar settings, parents have the right to expect that teachers and coaches will exercise reasonable care when in charge of their children and that courts will not immunize a teacher's negligence[1] by imposing a higher standard of care.[2]

---

[1] As we observed in Crawn, the imposition of a higher standard of care essentially immunizes all conduct falling short of that standard. 136 N.J. at 502.

[2] Whether or to what extent Fillmyer is entitled to any of the defenses and immunities contained in the Tort Claims Act, N.J.S.A. 59:1-1 to :12-3, is not before us. Nor does the fact that the Legislature immunized to some extent

Of course, our discussion of these issues should not be interpreted as an expression or intimation of how a factfinder should decide whether Fillmyer was negligent. We merely hold that <u>Crawn</u>'s recklessness standard does not apply in these circumstances and, to that extent, we substantially agree with the Appellate Division's decision that reversed the entry of summary judgment in Fillmyer's favor.

The judgment of the Appellate Division is affirmed, and the matter is remanded to the trial court for further proceedings.

CHIEF JUSTICE RABNER; JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, and FASCIALE; and JUDGE SABATINO (temporarily assigned) join in JUDGE FISHER's opinion.

---

some persons -- those who provide "services or assistance free of charge . . . as an athletic coach, manager, or official," N.J.S.A. 2A:62A-6(a), unless damage was caused by that person's "willful, wanton, or grossly negligent act of commission or omission," <u>id.</u> at -6(c)(1) -- have any particular bearing on our decision. Those provisions do not apply to Fillmyer, who provided her coaching services "as part of a public or private educational institution's athletic program." <u>Id.</u> at -6(f).

10